OPINION OF THE COURT
Eli Wager, J.
Jonathan Michael Evans, the nine-year-old son of the parties, has been the object of an interstate and international struggle for custody since his parents’ divorce four years ago in Nassau County. The record is replete with proceedings involving the child’s removal to Connecticut, Pennsylvania, Florida, Georgia and finally to Israel, where he now resides with his mother. Each of the parents has flouted the divorce decree and the subsequent orders of this court and other courts to which they resorted over the past four years. It is a pathetic and sorry tale in which each justifies his or her actions by professions of love for Jonathan. Their true motivation is more likely to be found in the bitterness of a broken marriage. The factual history follows.
THE FACTS
The divorce decree, dated May 25, 1977, was awarded to the plaintiff on grounds of cruel and inhuman treatment, *538 after a jury trial. Custody of Jonathan, then four and one half, was awarded to plaintiff with provisions for weekly and holiday visitations by the father.
The decree contained no provision restricting the plaintiff’s removal from the State and plaintiff in fact did move with the child shortly thereafter, apparently first to Connecticut and then to Pennsylvania. However, in February, 1979, Justice Burstein of this court reaffirmed custody in the plaintiff notwithstanding the effect of the move on defendant’s visitation privileges. In the summer of 1979 during one such visitation, the defendant, without notice to or consent of the plaintiff, took the child to Florida. Plaintiff obtained an order directing his return and reaffirming the original custody award. In September, 1979 defendant again snatched the child, this time taking him to a small town in Georgia where he made efforts to conceal his identity and remained for some four months. Plaintiff obtained an order of attachment here in October, 1979 and, with the aid of a private investigator, subsequently located the defendant in Georgia. On February 14, 1980 she obtained an order from a local Georgia court directing the defendant to return the child to her. Thereafter, in March, 1980, plaintiff fled with the child to Israel, thereby confirming the defendant’s contention, which he had frequently made in the course of prior litigation, that she planned to do just that.
On June 25,1980 the local Georgia court, on a motion to hold plaintiff in contempt, granted custody to the defendant, holding that its earlier order was predicated upon plaintiff’s vigorous denial of any intention to remove the child and that the plaintiff had misled the court when she denied any intention of going to Israel. However, that determination was subsequently reversed (on April 8, 1981) on plaintiff’s appeal to the Supreme Court of Georgia on the ground that, under Georgia’s Child Custody Jurisdiction Act, Georgia had no jurisdiction over the matter since the legal custodian did not reside in Georgia and the noncustodial parent had illegally removed the child into the State. Defendant later obtained an order dated Sep *539 tember 21, 1981 in this court (Delin, J.) striking the alimony and support provisions of the 1977 divorce decree on the ground that plaintiff’s removal to Israel denied him any meaningful and effective visitation.
THE PROCEEDINGS IN ISRAEL
In October, 1980 the High Court of Justice in Israel entertained defendant’s petition for a change of custody. The court denied the relief requested upon the ground that it was in the child’s best interests to remain with the plaintiff pending a de novo custody hearing in Israel and because of defendant’s “unclean hands” as evidenced by his illegal removal of the child to Florida and to Georgia. The defendant as well as the plaintiff were both present in Israel when the case was heard. Both were represented by counsel who vigorously pressed their respective cases. The three Judges on the panel, each of whom wrote an opinion, considered all aspects of the case, including the issue of the jurisdiction of their court and their determination on the latter issue was made pursuant to Israeli precedent. They refused to rule on the issue of the jurisdiction of the Georgia court, which, as noted, subsequently determined that in fact it had no jurisdiction.
The principal opinion details all of the sad history of the postmarital period including all of the legal proceedings and illegal acts of both parents leading up to the hearing in Israel. In determining that the child’s “best interests require that the case of the custody dispute between the parents should be deliberated in Israel”, Judge Ben Ito wrote, “[tjhe child who we are considering is accustomed to kidnappings and has already been moved about from place to place, from country to country, and from parent to parent.” Denying the father’s petition, he commented that “[t]he father will not bring his son to New York, and if we deliver the child to him, we might cause his being brought to the jurisdiction of a court which does not presently have the authority to consider the case”. Finally, in supporting his court’s decision to refer the custody issue for a hearing to a local Israeli court he wrote “[t]he court in Georgia is as foreign to the mother exactly as the court in Israel is to the father. The court in New York is foreign to all of them *540 because none of the parties is any longer present within its limits.”
The two separate concurring opinions of the Israeli Judges deal harshly with the acts of kidnapping indulged in by both parties. They conclude, however, that the child must not be punished fdr his parents’ acts and that a de novo hearing be held in Israel into all the elements currently affecting custody.
THE ISSUES
Three issues immediately present themselves: has this court jurisdiction to relitigate the custody issue in view of the fact that the child with his mother has resided in a foreign country since March of 1980 and in fact has not resided in New York since 1979; to what extent should this court give effect to the October, 1980 determination of the Israeli court; and, if jurisdiction exists to relitigate the issue, is the fact that both parties have acted in violation of the other’s rights relevant?
THE LAW
A reading of the Uniform Child Custody Jurisdiction Act (Domestic Relations Law, art 5-A) impels the conclusion that this court lacks jurisdiction to entertain this petition since it appears that the case comes within none of the provisions of section 75-d of the Domestic Relations Law (“Jurisdiction to make child custody determinations”) which details the circumstances under which a New York court may make or modify a custody decree. This State was not the “home” State of the child as required in paragraph (a) of subdivision 1, there is not “significant connection with this state” as required in paragraph (b) of subdivision 1 (see Steinman v Steinman, 80 AD2d 892), and the child is not physically present in this State as required by paragraph (c) of subdivision 1. Jurisdiction could arguably exist under section 75-d (subd 1, par [d]) since there is no other State which would have jurisdiction under paragraph (a), (b) or (c). However, section 75-w of the Domestic Relations Law (“International application”) provides as follows: “The general policies of this article extend to the international area. The provisions of this article relating to the recognition and enforcement of custody decrees of other states *541 apply to custody decrees and decrees involving legal institutions similar in nature to custody institutions rendered by appropriate authorities of other nations if reasonable notice and opportunity to be heard were given to all affected persons.”
In their comments on this section, the Commissioners on Uniform Laws (9 Uniform Laws Ann., § 23, p 168) state that the “second sentence [of the section] declares that custody decrees rendered in other nations by appropriate authorities (which may be judicial or administrative tribunals) are recognized and enforced in this country. The only prerequisite is that reasonable notice and opportunity to be heard was given to the persons affected. It is also to be understood that the foreign tribunal had jurisdiction under its own law rather than under section 3 of this Act [section 75-d of the Domestic Relations Law].”
Since “[d]ecree” is defined in the act (Domestic Relations Law, § 75-c, subd 4) as “a custody determination contained in a judicial decree or order made in a custody proceeding, and includes an initial decree and a modification decree”, the .October 22,1980 “judgment” of the Israeli court would appear to be a “custody decree” as the term is used in the section. The commissioners’ comments also direct that, because the act is applicable to international cases, the substance of, inter alia, subdivision (a) of section 14 of the Uniform Child Custody Jurisdiction Act (9 Uniform Laws Ann., p 153; Domestic Relations Law, § 75-o) is “to be followed when some of the persons involved are in a foreign country”. (9 Uniform Laws Ann., § 23, p 168.) Subdivision 1 of section 75-o of the Domestic Relations Law prohibits modification of a custody decree of another State unless “(1) it appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this article or has declined to assume jurisdiction to modify the decree and (2) the court of this state has jurisdiction.”
Although this provision would seem to contradict the commission’s comment that the foreign court have jurisdiction under its own law rather than under the act, it *542 appears that jurisdiction in Israel could have been predicated on the jurisdictional provisions in section 75-d.
Even prior to the enactment of the act in New York, New York courts, while recognizing that principles of comity do not mandate acceptance of a determination of a foreign domiciliary court in custody matters where jurisdiction otherwise exists in New York, also recognized that the principle “requires willing recognition, except in extraordinary circumstances affecting the health and welfare of * * * children *** In their absence, New York courts will yield readily to the domiciliary courts and not compound confusion by conflicting determinations or evaluations with regard to the same children” (Matter of Lang, 9 AD2d 401, 409).
CONCLUSION
Mother and child have resided in Israel since March, 1980. The father has resided in Georgia (although he fails to so state, his moving affidavit is made in Georgia) since September, 1979. As succinctly stated by Judge Ben Ito in Israel, “[t]he court in New York is foreign to all of them”. Thus, the conclusion is impelled that this court must decline to entertain this application for want of jurisdiction.