OPINION OF THE COURT
David O. Boehm, J.
The plaintiff was injured when a motorcycle he was operating collided with a vehicle owned by defendant, Marie C. Fusilli, and operated by defendant, Carole A. Fusilli, in the Town of Gates, New York, on August 24, 1980.
The motorcycle, manufactured by defendant, Yamaha Motor *318 Company, Ltd. (YMC), was sold on July 7, 1978 to defendant, Yamaha Motor Corporation, U.S.A. (YMUS), the exclusive distributor of Yamaha motorized products in the United States. On November 29, 1978, YMUS sold the motorcycle to defendant, Robinson Cycle Sales, Inc. (Robinson), a retailer located in Spencerport, New York. The plaintiff purchased the motorcycle from Robinson on April 10, 1980. Defendant, Yamaha International Corporation (YIC), has since 1977 been the exclusive distributor for Yamaha nonmotorized products in the United States.
Plaintiffs action against the corporate defendants is based on negligence, breach of warranty, and strict products liability.
YMC is a Japanese corporation whose manufacturing activity is conducted exclusively in Japan. It does no business in this country and has no agent authorized to accept service in the United States on its behalf. Accordingly, the plaintiff served YMC with a summons and complaint on March 25, 1983 by delivering a copy to the New York Secretary of State and by mailing a copy to YMC at its corporate headquarters in Japan, pursuant to Business Corporation Law § 307. YMC received the summons and complaint on April 7, 1983.
YMC’s answer, dated April 22, 1983, contained affirmative defenses of lack of personal jurisdiction and defective service of process.
Thereafter, on August 9, 1983, the plaintiff sent copies of the summons and complaint to the Ministry of Foreign Affairs in Tokyo, Japan, for service, pursuant to the International Convention of the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, commonly referred to as the Hague Convention (20 US Treaties 361, reprinted in Fed Rules Civ Pro, rule 4 [in 28 USC, Appendix, 1985 Pocket Part, pp 87-101]). Service was made on YMC by delivery of the summons and complaint to a YMC employee, Yukie Maki, on October 13, 1983. On November 4, 1983, YMC served another answer on the plaintiff, which again asserted the affirmative defenses of lack of personal jurisdiction and defective service of process and, in addition, that the causes of action were barred by the applicable Statutes of Limitation.
YMC’s motion to dismiss the plaintiff’s negligence and strict product’s liability action is brought on the ground that proper service upon it was not made within the three-year Statute of Limitations period. YMC, however, does not raise any objec *319 tion to the manner service was effected under the Hague Convention.
The Hague Convention "provides a mechanism by which a plaintiff authorized to serve process under the laws of its country can effect service that will give appropriate notice to the party being served and will not be objectionable to the country in which that party is served” (DeJames v Magnificence Carriers, 654 F2d 280, 288, cert denied 454 US 1085; see also, Tamari v Bache & Co. [Lebanon] S.A.L., 431 F Supp 1226, 1228, affd 565 F2d 1194, cert denied 435 US 905). "By virtue of the supremacy clause [US Const, art VI, cl 2] the treaty overrides state methods of serving process abroad that are objectionable to the nation in which the process is served” (DeJames v Magnificence Carriers, supra, pp 288-289; see also, United States v Pink, 315 US 203, 230-231).
The Hague Convention allows signatory nations to ratify its provisions subject to conditions or objections (Hague Convention art 21). At issue here is Hague Convention article 10, which states:
"Provided the State of destination does not object, the present Convention shall not interfere with—
"(a) the freedom to send judicial documents, by postal channels, directly to persons abroad.
"(b) the freedom of judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination.
"(c) the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination.”
Although Japan has objected to the use of the methods of service provided in subparagraphs (b) and (c) of article 10, it has not objected to the service in subparagraph (a) (Hague Convention, reprinted in Fed Rules Civ Pro, rule 4 [in 28 USCA, Appendix, 1985 Pocket Part, p 97, n 12 (4)]).
The plaintiff does not claim that the October 13, 1983 service made upon YMC pursuant to the Hague Convention was timely, it having been made more than three years after the August 24, 1980 accident. Rather, the plaintiff contends that since Japan raised no objection to subparagraph (a) of article 10, service was properly made pursuant to that subpar *320 agraph on April 7, 1983, when YMC received the summons and complaint sent through postal channels.
The interpretation advanced by the plaintiff that Japan’s failure to object to subparagraph (a) permits the conclusion that it intended to permit service by direct mailing to the person to be served is supported by judicial authority (see, Weight v Kawasaki Heavy Indus., 597 F Supp 1082; Chrysler Corp. v General Motors Corp., 589 F Supp 1182; Shoei Kako Co. v Superior Ct., 33 Cal App 3d 808, 109 Cal Rptr 402).
However, the courts of this State have taken a contrary view, reasoning that every provision of the Hague Convention except subparagraph (a) of article 10 uses the word "service” when prescribing approved methods of transmission for service, and that a liberal reading of "send” to include effective service of process "would vitiate the fundamental intent of the parties [to the Hague Convention] to establish more formal modes of service” (Ormandy v Lynn, 122 Misc 2d 954, 955). Recently, in Reynolds v Woosup Koh (109 AD2d 97), the Appellate Division, Third Department, expressly rejected the interpretation given article 10 (a) by the courts in Chrysler Corp. v General Motors Corp. (supra) and Shoei Kako Co. v Superior Ct. (supra) and adopted the construction given in Ormandy. This court is constrained to follow that ruling (see, 1 Carmody-Wait 2d, NY Prac § 2:58). Accordingly, plaintiff’s method of service upon YMC in March and April 1983 was improper. Proper service was not made on YMC until October 13, 1983, two months after the three-year Statute of Limitations (CPLR 214) had expired. Therefore, the motion by YMC to dismiss plaintiff’s causes of action for negligence and strict products liability must be granted.
YMC and YMUS are also moving to dismiss the breach of warranty causes of action on the ground that they were not commenced within the four-year Statute of Limitations period (UCC 2-725).
Recently, in Heller v U.S. Suzuki Motor Corp. (64 NY2d 407) the Court of Appeals held that a cause of action for breach of implied warranty (UCC 2-318) accrues on the date that the defendant charged with the breach first tenders delivery of the product, not on the date that some third party sells it to the plaintiff. Thus, the four-year Statute of Limitations would begin to run against each defendant upon its tender of delivery.
YMUS sold the motorcycle to Robinson on November 29, *321 1978, but plaintiff did not commence his action against YMUS until March 7 or 8, 1983, some three months after the four-year limitations period had expired. Accordingly, YMUS’ motion to dismiss the breach of warranty action against it is granted.
Plaintiff resists YMC’s motion to dismiss, arguing that Heller v U.S. Suzuki Motor Corp. (supra) is inapplicable because the plaintiff in that case did not sue the manufacturer, but only the United States distributor and the retailer. The instant case differs also, the plaintiff contends, because it includes an action for express warranty as well as one for implied warranty.
Although the plaintiff in Heller did not bring suit against the manufacturer, there is no apparent basis for limiting its holding to tender of delivery by distributors or retailers. In fact, the court in Heller expressly stated, "it remains the law that a cause of action against a manufacturer or distributor accrues on the date the party charged tenders delivery of the product” (Heller v U.S. Suzuki Motor Corp., 64 NY2d 407, 411, supra; emphasis added). The Court of Appeals cited in support of this position the cases of Doyle v Happy Tumbler Wash-O-Mat (90 AD2d 366) and Fazio v Ford Motor Corp. (69 AD2d 896), both of which involved breach of warranty claims against manufacturers.
Plaintiff’s contention that the Heller holding is inapplicable in cases involving breach of an express warranty is also without merit. UCC 2-725 sets forth the period of limitations for breach of a contract of sale and provides that such action "must be commenced within four years after the cause of action has accrued” (UCC 2-725 [1]). Subdivision (2) of that section states that a "breach of warranty occurs when tender of delivery is made”, and it was this provision which the court in Heller relied upon in holding that a breach of warranty cause of action accrues against a manufacturer or distributor on the date that that party tenders delivery of the product (Heller v U.S. Suzuki Motor Corp., 64 NY2d 407, 411, supra). With the exception of warranties which explicitly extend to future performance, which the plaintiff does not contend exists here, section 2-725 makes no distinction between express or implied warranties, suggesting that the period of limitations for each begins to run from the same time (see, 5 Anderson, Uniform Commercial Code § 2-725:73 [3d ed]). This conclusion is consistent with the decision in Fazio v Ford Motor Corp. (69 AD2d 896, supra) where it was held that *322 causes of action for breach of both express and implied warranties accrued against the defendant automobile manufacturer at the time of the original sale in 1964 and not when the plaintiffs purchased the vehicle in 1973. Accordingly, personal injury actions founded on a breach of warranty, whether express or implied, must be commenced within four years from the tender of delivery by the party charged with the breach (see, 1 Weinberger, New York Products Liability § 11:04).
In this case YMC sold the motorcycle to YMUS on July 7, 1978. Because service was not made upon YMC within four years of that date (July 7, 1982), the period of limitations had expired before plaintiff’s action was brought. YMC’s motion to dismiss the breach of warranty cause of action, accordingly, is granted.