Steven Rissew, Appellant, v Yamaha Motor Co., Ltd., et al., Respondents, et al., Defendants.

Fourth Department, May 22, 1987

## APPEARANCES OF COUNSEL

*Paul William Beltz, P. C. (William Quinlan* of counsel), for appellant.

*Hurwitz & Fine, P. C. (Thomas Bender* of counsel), for Yamaha Motor Co., Ltd., and another, respondents.

## OPINION OF THE COURT

GREEN, J.

The principal question presented on this appeal is

whether service of process by mail pursuant to section 307 of the Business Corporation Law is sufficient to obtain jurisdiction over foreign corporations under article 10 (a) of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Criminal Matters. We hold that it is.

The facts are not in dispute. On August 24, 1980, plaintiff was injured when a motorcycle he was driving collided with a vehicle owned and operated, respectively, by defendants Marie and Carole Fusilli. Defendant Yamaha Motor Company, Ltd. (YMC) manufactured the motorcycle and, on July 7, 1978, sold it to defendant Yamaha Motor Corporation U.S.A. (YMUS), the exclusive distributor of Yamaha motorized products in the United States. On November 29, 1978, YMUS sold the motorcycle to defendant Robinson Cycle Sales, Inc. who sold it to plaintiff on April 10, 1980. Plaintiff commenced this action alleging negligence, strict products liability and breach of warranty.

Since YMC is a Japanese corporation which neither does business in the United States, nor has an authorized agent to accept service in this country, plaintiff served YMC in March 1983, pursuant to section 307 of the Business Corporation Law, by delivering a copy of the summons and complaint to the New York Secretary of State and by mailing a copy to YMC at its corporate headquarters in Japan. In its answer, YMC asserted the affirmative defense of lack of personal jurisdiction based upon defective service.

On August 9, 1983, plaintiff attempted to effect service pursuant to the Hague Convention (Nov. 15, 1965, 20 UST 361; TIAS No. 6638) by sending copies of the summons and complaint to the Japanese Ministry of Foreign Affairs in Tokyo. For reasons not apparent in the record, actual service was not made on YMC until October 13, 1983 when the summons and complaint were personally delivered to a YMC employee. YMC again asserted the defense of lack of personal jurisdiction based on defective service and alleged for the first time that the various causes of action were time barred by the applicable Statutes of Limitation.

Special Term (129 Misc 2d 317) granted YMC's motion to dismiss the causes of action for negligence and strict products liability on the grounds that service effected under the Hague Convention on October 13, 1983 was more than three years from the date of plaintiff's accident on August 24, 1980 and

that plaintiff's service upon YMC effected in March 1983 pursuant to section 307 of the Business Corporation Law, although timely, was not authorized under the Hague Convention. Special Term recognized that decisions from other jurisdictions reached a contrary result, but believed it was "constrained to follow" (citing 1 Carmody-Wait 2d, NY Prac § 2:58, at 69-70) a recent decision of the Appellate Division, Third Department *(Reynolds v Woosup Koh,* 109 AD2d 97), which narrowly interpreted article 10 (a) of the Hague Convention. Not operating under the same constraint as Special Term, we decline to follow the Third Department's holding and conclude that service by mail is authorized under the Hague Convention.

Article 10 of the Hague Convention states:

"Provided the State of destination does not object, the present Convention shall not interfere with—

"(a) the freedom to send judicial documents, by postal channels, directly to persons abroad,

"(b) the freedom of judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination,

"(c) the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination."

Signatory Nations, such as Japan, are afforded the opportunity to object to various provisions of the treaty. Japan specifically has objected to article 10 (b) and (c), but has not objected to article 10 (a).

The narrow question presented, then, is whether the "freedom to *send* judicial documents, by postal channels, directly to persons abroad" (emphasis added) permitted by article 10 (a) authorizes the service of a summons and complaint by mail pursuant to section 307 of the Business Corporation Law. The Third Department reasoned that the use of the word "send" rather than "service" in article 10 (a) indicated that this provision "was meant to authorize something other than 'service' in the legal sense, such as the mere transmittal of notices and legal documents which need not be 'served' in the legal sense" *(Reynolds v Woosup Koh,* 109 AD2d 97, 99, *supra).*

The purpose of the Hague Convention is "to simplify service of process abroad so as to ensure that documents are brought

to the notice of the addressee in sufficient time" *(Tamari v Bache & Co. [Lebanon] S.A.L.,* 431 F Supp 1226, 1228 [ND Ill 1977], *affd* 565 F2d 1194, *cert denied* 435 US 905). The Hague Convention has the status of a self-executing treaty and constitutes the supreme law of the land under article VI of the US Constitution. Thus, article 10 (a) takes precedence over State law *(see, Vorhees v Fischer & Krecke,* 697 F2d 574 [4th Cir 1983]; *Weight v Kawasaki Heavy Indus.,* 597 F Supp 1082, 1085 [ED Va 1984]).

It is significant that Japan has objected to article 10 (b) and (c), which permits service of judicial documents directly through judicial officers, but has not objected to article 10 (a), which prohibits interference with the freedom to send judicial documents by postal channels. Service of process from the United States in a foreign country by registered mail is a much less intrusive means of service because it minimizes the imposition upon local authorities which service under article 10 (b) and (c) would cause *(see, Chrysler Corp. v General Motors Corp.,* 589 F Supp 1182, 1206 [DDC 1984]). Since the Hague Convention as a whole deals with service of judicial documents abroad, "[t]he reference to the 'freedom to send judicial documents by postal channels, directly to persons abroad' would be superfluous unless it was related to the sending of such documents for the purpose of service" *(Shoei Kako Co. v Superior Ct.,* 33 Cal App 3d 808, 821, 109 Cal Rptr 402, 411). It has been observed that the use of the word "send" in article 10 (a) rather than the consistently used "service" in other sections of the treaty *(e.g.,* art 10 [b], [c]) is the result of careless drafting rather than any intentional legislative effort to create a distinction between the two terms *(see,* 1 Ristau, International Judicial Assistance [Civil and Commercial] § 4-28, at 165-167; *cf., Ordmandy v Lynn,* 122 Misc 2d 954, 955).

Since Japan has not objected to the use of "postal channels" under article 10 (a), service of process by registered mail constitutes an appropriate method of service *(see, Ackermann v Levine,* 788 F2d 830, 839 [2d Cir 1986]; *Shoei Kako Co. v Superior Ct., supra,* 33 Cal App 3d, at 821-822). Plaintiff's service of the summons and complaint by mail upon YMC under section 307 of the Business Corporation Law in March 1983 was within three years of plaintiff's accident, and the causes of action for negligence and strict products liability should not have been dismissed *(see,* CPLR 214 [5]).

■ The remaining issue is whether Special Term properly dismissed as untimely plaintiff's cause of action for breach of

warranty. We hold that it did. A cause of action for breach of express or implied warranty against a manufacturer or distributor "accrues on the date the party charged tenders delivery of the product, not on the date that some third party sells it to plaintiff" (Heller v U. S. Suzuki Motor Corp., 64 NY2d 407, 411; see also, UCC 2-725 [2]). As Judge Meyer points out in his dissent in Heller, the failure of the Legislature to amend the Statute of Limitations for breach of warranty (UCC 2-725 [1]) at the time it abolished the privity requirement for such a claim (UCC 2-318, as amd by L 1975, ch 774) may justify the inference that the Legislature intended the date of retail sale to be the date of accrual, even for causes of action against others in the distributive chain. We are bound to follow the majority holding in Heller, however, which assumes that in the absence of an explicit change by the Legislature, none was intended.

Here, tender of delivery of the motorcycle by defendant manufacturer YMC occurred on July 7, 1978 and tender to defendant distributor YMUS occurred on November 29, 1978. Since a claim for breach of warranty must be interposed within four years after the cause of action accrued (see, UCC 2-725 [1]), plaintiff's commencement of this cause of action in March 1983 was untimely.

Accordingly, the order should be modified by denying defendants' motions insofar as they seek dismissal of plaintiff's causes of action for negligence and strict products liability and, otherwise, the order should be affirmed.

DOERR, J. P., DENMAN, BALIO and DAVIS, JJ., concur.

Order unanimously modified, on the law, and, as modified, affirmed, without costs, in accordance with opinion by Green, J.