OPINION OF THE COURT
William Rigler, J.
These two applications for pendente lite relief raise the extremely troublesome issue of one spouse unilaterally removing the infant issue of the marriage from the jurisdiction and more problematic, removing the children from the country. In this case, the children were removed to Israel. The pendente lite relief requested by the plaintiff wife includes custody, child support and maintenance.
The initial objection raised by defendant husband from Israel is that he was improperly served with the initial order to show causeL summons and complaint. Defendant concedes that in Israel service by an agent of an advocate is proper service (Civ Pro Regs 5744-1984 of Israel, art 32, § 475). The evidence presented to this court by affidavit of Advocate Edwin Freedman indicates that the person who completed service on defendant was an agent of the advocate. Thus, the court finds that service on defendant was proper since service was made by a "person authorized to make service by the laws of the * * * country in which service is made” (CPLR 313).
The next question and the more serious one is whether this court has subject matter jurisdiction to entertain the applications. The issue of international jurisdiction is a perplexing one. Unfortunately, with the increase of mobility in modern society, this court has seen more and more cases of one spouse removing him or herself and the parties’ children from this country. It is a hard enough situation when the spouse moves with the children to another State. It is infinitely more difficult when international borders are crossed. When that occurs, the courts, and the party left behind, must deal with not only different laws but different cultures and usually significant geographical distances. The present case is just such a situation.
*176 Plaintiff and defendant were married to each other in Israel on March 31, 1973. There are three infant issue of the marriage, Shoshana, born February 23, 1974, Tzvika, born May 2, 1975, and Yehuda, born December 5, 1977. The children were all born in Israel. While every member of the family is an Israeli citizen they all currently hold resident alien or "green” cards for the United States of America.
In August 1979 the family moved to England where it stayed for three years. They returned to Israel in June 1982. In August 1984 the family moved to the United States, and more particularly to Brooklyn, New York. They all remained in New York until May 24, 1988 when defendant, without notice to plaintiff, removed himself and the three children from Brooklyn and returned to Israel.
Since their arrival in Brooklyn, and during the entire approximately four-year period they were here, the children attended school in Brooklyn. They have developed friends here as well. The parties themselves have been actively employed during this period. In addition, the couple has within the last year bought a condominium in Brooklyn to be used as the family residence. As previously noted, all members of the family have green cards. It thus appears that the intentions of the parties were to remain, except for short trips, in Brooklyn.
However, the living situation changed dramatically on May 24, 1988. On that date, defendant, instead of taking the children to school, returned home, packed up their belongings and removed the children to Israel. This was done without the consent of plaintiff and in fact without notice to her. The children were thus removed from school approximately two weeks before the term ended. They did not finish the term and the oldest child missed her graduation from the eighth grade.
Plaintiff immediately commenced an action for divorce and other relief as well as bringing on this application for temporary custody of the children. She also brought a habeas corpus petition in the Israeli courts to have the children returned to the United States so that they could be available to this court for the hearing on custody. It now appears that defendant has subsequently attempted to start a divorce and custody action in the Israeli courts.
On the July 7, 1988 return date of this custody application, both parties were represented by counsel. Defendant’s counsel is an attorney admitted to practice in New York but who resides in Israel. At that time, defendant and his counsel were *177 advised to obtain truly local counsel. As of this date, such counsel has not been obtained. In fact, defendant seeks another adjournment in order to obtain such counsel.
At the time of the July 7, 1988 return date there was pending before the Israeli Supreme Court sitting as the High Court of Justice plaintiffs application for a habeas corpus to have the children produced in New York for this custody proceeding. This court refused defendant’s request that this present Brooklyn proceeding be held in abeyance pending resolution of any custody matters in Israel. Instead the court issued an order setting down the custody hearing for August 29, 1988 at which time defendant was to appear. In addition, defendant was ordered to produce the children for the hearing.
Prior to August 29, 1988, the Israeli High Court issued a decision on the writ of habeas corpus. The court held that "the question of custody is justiciable before the District Court of Tel-Aviv-Yafo, and that it not appropriate, at this stage, for intervention by the High Court of Justice.” The court then dismissed the habeas corpus proceeding.
The word justiciable as defined by Black’s Law Dictionary 777 (5th ed) means "[m]atter appropriate for court review.” The High Court of Justice was thus stating, as between the two Israeli courts, the High Court of Justice or the District Court, the District Court was the appropriate forum for review of the issues surrounding custody. The issues surrounding custody would include the question of which court system, Israel’s or New York’s, should determine custody. There was nothing in the High Court of Justice’s ruling to indicate that it had decided that Israel rather than New York should exert jurisdiction over the divorce and actual custody issues.
Additionally, it should be noted that the Israeli District Court action referred to by the High Court of Justice is an action commenced by defendant in which it appears the issue of jurisdiction to hear the matter has not as yet been raised. It also appears to have been commenced after the New York action. Thus, the High Court did not determine that Israel was the proper place for the custody and divorce proceedings to take place. Rather, it decided that the High Court of Justice was not the proper court to determine the issue at that point in time. Hence, defendant’s claim that the Israeli courts have determined that they have jurisdiction over the present matter does not appear to be true.
*178 This court is therefore free to determine whether it has jurisdiction over these parties as well as the subject matter of the divorce and related issues including custody. The court is cognizant that even if the Israeli courts had exerted jurisdiction over the issues in this matter it would not be bound by said interpretation. As stated by Professor Merril Sobie in the Practice Commentaries to Domestic Relations Law § 75-w ("International application [of the Uniform Child Custody Jurisdiction Act (UCCJA)]”). "[T]he New York courts are not statutorily required to apply Article 5-A’s [UCCJA] jurisdictional provisions in determining international custody disputes, and are not required to defer to the courts of a foreign country.” (Sobie, Practice Commentaries, McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law § 75-w, at 363.)
However, pursuant to Domestic Relations Law § 75-w the court is bound by the notion that: "The general policies of this article [5-A, UCCJA] extend to the international area.” Domestic Relations Law § 75-b (1) outlines the general purposes of the UCCJA. The goals of the statute include:
"(c) [to] assure that litigation concerning the custody of a child take place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training, and personal relationships is most readily available, and that courts of this state decline the exercise of jurisdiction when the child and his family have a closer connection with another state * * *
"(e) deter abductions and other unilateral removals of children undertaken to obtain custody awards” (emphasis added).
In section 75-d of the Domestic Relations Law is set out when the courts of New York have jurisdiction in custody matters. The section reads in pertinent part:
"1. A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree only when:
"(a) this state (i) is the home state of the child at the time of commencement of the custody proceeding, or (ii) had been the child’s home state within six months before commencement of such proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state * * *.
"3. Physical presence of the child, while desirable, is not a *179 prerequisite for jurisdiction to determine his custody.” (Emphasis added.)
The "home state” is defined in Domestic Relations Law § 75-c (5). The section reads that the home State is: "[T]he state in which the child at the time of the commencement of the custody proceeding, has resided with his parents, a parent, or a person acting as parent, for at least six consecutive months.”
Clearly under the facts of this case New York was the home State of the children at the time they were removed from Brooklyn. Defendant’s attempt to obfuscate this fact is of no avail. Since this action was commenced within six months of the children’s removal and plaintiff still lives in this State this court has jurisdiction to determine custody. (Domestic Relations Law § 75-d [1] [a] [ii].)
It should be noted that Israel, in spite of defendant’s attempt to define it as such, is not the home State for the children. First, they have not resided in Israel for six months. (Domestic Relations Law § 75-c [5].) Second, Israel is not a State within the definition of the statute (Domestic Relations Law § 75-c [10]; Matter of Massey v Massey, 89 AD2d 566).
Furthermore, any attempts by defendant to claim that New York is an inconvenient forum pursuant to Domestic Relations Law § 75-h must also fail. Section 75-h (1) permits the New York courts to decline to exercise jurisdiction upon a finding that New York is an inconvenient forum and "a court of another state is a more appropriate forum.” As just noted, Israel is not a State under the law. Therefore, no other State is a more appropriate forum (see, Matter of Massey v Massey, supra).
In addition, a review of the factors necessary to determine the inconvenience of a forum does not yield the result requested by defendant. These factors are:
"(a) another state is or recently was the child’s home state;
"(b) another state has a closer connection with the child and his family or with the child and one or more of the contestants;
"(c) substantial evidence concerning the child’s present or future care, protection, training, and personal relationships is more readily available in another state;
"(d) the parties have agreed on another forum which is no less appropriate; and
"(e) the exercise of jurisdiction by a court of this state would *180 contravene any of the purposes stated in section seventy-five-b of this article.” (Domestic Relations Law § 75-h [3].)
The children in the present action were in New York for four years prior to their removal. Their friends are here. Their school records are here. Their teachers are here. Furthermore, they have green cards showing they intend to remain in the United States (see also, Matter of Lotte U. v Leo U., 128 Misc 2d 896). Thus, in this court’s discretion it declines to dismiss this action on the grounds of inconveniént forum. It is ordered that this court will exercise jurisdiction over this case.
Having decided that this court has jurisdiction over this action, the court must now address the substantive aspects of this case. In regards to the application for pendente lite custody of the children, the court is mindful that the general rule in this State is that a child should not be removed from his domicile without the consent of the other spouse. Usually the cases involve a custodial parent removing a child against the wishes of a noncustodial parent. In those cases the courts have traditionally looked with disfavor on any move which unreasonably interferes with the noncustodial spouse’s visitation rights. (See, Weiss v Weiss, 52 NY2d 170; Strahl v Strahl, 66 AD2d 571, affd 49 NY2d 1036.) In the present case neither parent had sole custody. Thus, the rights of both are equal and would be stronger than those of a noncustodial parent in regard to preventing a child’s removal from the jurisdiction.
The Second Department has very recently reiterated that interference with the relationship between a child and a noncustodial parent and this court adds any parent should not be condoned. The court stated: "We take this opportunity to remind [parties] * * * that 'interference with the relationship between a child and a noncustodial parent by the custodial parent has been said to be an act so inconsistent with the best interests of the child as to per se raise a strong probability that the offending party is unfit to act as a custodial parent (Daghir v Daghir, 82 AD2d 191, affd 56 NY2d 938)’ (Leistner v Leistner, 137 AD2d 499, 500).” (Skolnick v Skolnick, 142 AD2d 570, 571.) Based upon the holding in Skolnick, this court determines that the apparent surreptitious removal of the children to Israel by defendant was not in the best interests of the children and is indication of an act of a person unfit to maintain custody. Therefore, it is ordered that pending further order concerning custody by this court, custody of the children shall be with plaintiff.
*181 It is ordered that defendant shall produce the children in Brooklyn within two weeks of service of the order with notice of entry. He shall also surrender to plaintiff all their passports.
The issue of support and maintenance is adjourned until November 2, 1988. However, pending the hearing and determination of the application, it is ordered that defendant shall pay $1,000 per month maintenance and $500 per month child support. The child support is to commence when the children are delivered to plaintiff.
It is ordered that the infant issue are to be produced in court on the return date in October so that they may be interviewed by the court. Furthermore, it is ordered that defendant appear on the November 2, 1988 return date by local counsel (see, Judiciary Law § 470).