OPINION OF THE COURT
David Goldstein, J.
In this action, plaintiff moves to suspend child support payments which had been ordered by the court, upon the ground that defendant has not complied with the visitation arrangements set forth in the divorce decree. The plaintiff also requests that this court grant comity to child and spousal support orders issued by the Rabbinical Court of Israel, but not to child custody /visitation orders which were also issued by the Rabbinical Court. Defendant cross-moves to (1) vacate the portions of the divorce decree regarding equitable distribution, child support, and visitation; (2) order a hearing on the issue of equitable distribution; and (3) compel plaintiff to provide defendant with a "Get” — a religious divorce in the Jewish faith. Defendant claims she was never served with the summons and complaint for divorce but is willing to submit to the jurisdiction of this court only for the purposes of the civil divorce and to have a new hearing on equitable distribution.
Plaintiff and defendant were married in New York on January 16, 1981. On September 10, 1983, daughter Ariella was born. Defendant claims that she, plaintiff, and Ariella moved to Israel in about 1987, with the intention of living there permanently. Although they purchased an apartment in Israel, plaintiff claims that he had no intention of permanently relocating there and had applied for permanent residency in that country only to obtain government benefits for defendant and Ariella. It appears that Mr. Zwerling returned to New York during 1987, and has lived here ever since. Defendant, an Israeli citizen, and Ariella, who is a citizen of both the United States and Israel, have remained in Israel and continue to reside there.
*784 In September of 1989, during religious divorce proceedings initiated by plaintiff, the Rabbinical Court of Israel, which has jurisdiction over matrimonial matters, awarded custody of Ariella to the defendant and prohibited removal of the child from Israel without permission of the Rabbinical Court. On December 12, 1989, the Rabbinical Court ordered plaintiff to pay defendant $30,000 as a guarantee for alimony and child support payments, or $1,000 per month. Plaintiff did not follow through with the religious divorce at that time.
On August 17, 1990, plaintiff obtained a default judgment in this court, awarding him a judgment of divorce upon the ground of abandonment (judgment, Gallagher, J.). The divorce decree awarded joint custody of Ariella and directed plaintiff to continue paying $1,000 per month in child support. The parties were also ordered to sell the apartment in Israel and to split the proceeds, when either Ariella reaches emancipation or defendant remarries. It appears from the judgment of divorce that this court was not made aware of the prior proceedings in Israel.
In March of 1993, plaintiff reinstated religious divorce proceedings in Israel. On June 16, 1993, the Rabbinical Court ruled that the parties were to obtain a religious divorce and ordered counseling for Ariella to renew her relationship with plaintiff. In November of 1993, the Rabbinical Court ordered the parties to negotiate a divorce and reduced the spousal and child support to $500 per month. In 1994, the Rabbinical Court issued several orders concerning Ariella’s visitation with plaintiff in New York. On August 4, 1994, it reduced the plaintiff’s alimony and child support to $100 per month, as a result of defendant’s failure to comply with the Rabbinical Court’s visitation orders. The appellate Rabbinical Court upheld the lower Rabbinical Court’s support and visitation determinations. Both parties were represented by counsel on each occasion before the Rabbinical Court. The religious divorce in the Rabbinical Court is presently pending.
There are two forms of jurisdiction involved in matrimonial cases — in rem over the marital status and in personam over the individual spouse. The court may exercise in rem jurisdiction over the marital status (CPLR 314 [1]; see, Renaudin v Renaudin, 37 AD2d 183, 185), provided one of the applicable provisions of the residency requirements of Domestic Relations Law § 230 is satisfied. (See, Carr v Carr, 46 NY2d 270, 273; Lacks v Lacks, 41 NY2d 71, 72-73; Eckert v Eckert, 34 AD2d 684.) Once notice is properly served upon the defendant (see, *785 Domestic Relations Law § 232) the court may enter a binding judgment of divorce, separation, or annulment (see, CPLR 105 [p]), but it may not enter a judgment adjudicating the economic, child custody, and child support rights of the parties. In personam jurisdiction must be acquired over the person pursuant to CPLR 301, 302, 313, or by consent in order to determine these issues. (See, Baron v Baron, 75 AD2d 797, 798; Renaudin v Renaudin, supra, at 185; Pitrowski v Pitrowski, 97 Misc 2d 755, 758-759.)
In the present case, plainly, plaintiff has met the residency requirements contained in Domestic Relations Law § 230 (1) and the notice requirements of Domestic Relations Law § 232. The defendant did not appear and a default judgment for divorce was entered. Although defendant alleges she was never served, she does not challenge the court’s in rem jurisdiction and accepts the judgment of divorce.
Defendant, however, does challenge the court’s in personam jurisdiction (see, CPLR 5015 [a] [4]) to adjudicate the equitable distribution, child support, and child custody provisions incorporated in the divorce decree. If service has not been properly effected, the court is without jurisdiction and "a default judgment must be unconditionally vacated”. (Citibank v Keller, 133 AD2d 63, 64-65; see, DeMartino v Rivera, 148 AD2d 568, 569; Smith v Wilson, 130 AD2d 821, 822.) Thus, at issue here is the propriety and sufficiency of service, not in terms of in rem jurisdiction to adjudicate the marital status of the parties, but in personam, to determine economic issues, including equitable distribution, child custody and support and maintenance obligations.
The defendant was served pursuant to CPLR 313. Under CPLR 313, service outside the State of New York must be made in the same manner as service within the State. (McLaughlin, Practice Commentaries, McKinney’s Cons Law of NY, Book 7B, CPLR C313:2, at 427.) An exception to this statute is the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (20 UST 361, TIAS 6638 [1969] [Convention on Service Abroad]; see, McLaughlin, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C313:2, at 428), to which the United States and Israel are signatories. This treaty, which supersedes State statutes pursuant to the Supremacy Clause of the United States Constitution (US Const, art VI, § 2), requires service upon parties in a signatory nation to be made through a Central Authority designated by the signatory nation. *786 (Convention on Service Abroad, op. cit., ch 1, arts 2-3.) The only exception to this rule that is applicable to the instant matter is contained in article 10 of the Convention:
"Provided the State of designation does not object, the present Convention shall not interfere with—
"(a) the freedom to send judicial documents, by postal channels, directly to persons abroad;
"(b) the freedom of judicial officers, officials, or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials, or other competent persons of the State of destination;
"(c) the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials, or other competent persons of the State of designation.”
Israel objected to paragraphs (b) and (c) and signed the treaty with the following reservation: "b) The State of Israel, in its quality as State of destination, will, in what concerns Article 10, paragraphs b) and c), of the Convention, effect the service of judicial documents only through the Directorate of the Courts, and only where an application for such service emanates from a judicial authority or from the diplomatic or consular representation of a Contracting State.”
In the instant matter, plaintiff sent the summons and complaint to the son-in-law of defendant’s brother, in Israel, to personally serve the defendant. He did not make service through the Directorate of the Courts, as required by Israel in the treaty. Therefore, service under paragraphs (b) and (c) of article 10 was improper.
Service under article 10 (a) was also improper here. The meaning of the word "send” in article 10 (a) and whether this encompasses service of process was discussed in several cases concerning Japan, also a signatory to the Convention, who had also objected to paragraphs (b) and (c) of article 10.
In Ordmandy v Lynn (122 Misc 2d 954, 955), the court concluded that, "a liberal reading of 'send’ to include effective service of legal process would vitiate the fundamental intent of the parties [expressed in the Hague Convention] to establish more formal modes of service”. Thus, since direct service upon a defendant, by registered mail, directed to him in Japan, was not authorized by paragraph (a) of article 10, the Ordmandy court concluded that the Hague Convention did not authorize such service by mail.
*787 In Reynolds v Woosup Koh (109 AD2d 97, 99), the Appellate Division, Third Department, adhered to the principle discussed in Ordmandy and held that, since the Hague Convention repeatedly refers to "service of documents,” the word "send” in article 10 (a) meant something other than the service of notices and documents in the legal sense. In that case, it was held that the mere sending of the summons and complaint to the defendant in Japan did not satisfy the service requirements of the Hague Convention and, therefore, personal jurisdiction had not been obtained. In so holding, the Reynolds Court reasoned that "the rule deduced in Ordmandy (supra) * * * appears to us most consistent with the intent and design of the Hague Convention”. (Supra, at 100.)
In Rissew v Yamaha Motor Co. (129 AD2d 94, 98), the Appellate Division, Fourth Department, disagreed and held that service of process upon a defendant in Japan, by registered mail, was permissible under article 10 (a). In doing so, the Fourth Department disagreed with the analysis of the Third Department and held that the use of the word "send” in article 10 (a), rather than the term "service” as used in other provisions of the treaty, was "the result of careless drafting rather than any intentional legislative effort to create a distinction between the two terms”. (Supra, at 98 [citations omitted].) Since Japan did not object to the use of "postal channels” under article 10 (a), service by registered mail was an appropriate method of service.
Similarly, in Philip v Monarch Knitting Mach. Corp. (169 AD2d 603, 604), the Appellate Division, First Department, agreed with the position of and interpretation by the Fourth Department and held that service of a summons and complaint upon the New York Secretary of State, pursuant to Business Corporation Law § 307, was in conformity with article 10 (a), where the Secretary of State sent notice of such service and a copy of process by registered mail to defendant in Japan. In so holding, the First Department observed that, in adopting the Convention, Japan interposed objections only to paragraphs (b) and (c) of article 10, not paragraph (a) and, further, placed no limitations or modifications upon article 10 (a). Upon this basis, the appellate Court found that service of process, effected by registered mail upon defendant, at its principal office in Japan, conformed with article 10 (a) of the Hague Convention. (See also, Mezitis v Mezitis, NYLJ, Nov. 21, 1995, at 25, col 5 [Sup Ct, NY County].)
In our case, the plaintiff did not send the summons and complaint directly to defendant by registered mail (as he had done *788 with the judgment of divorce and notice of entry which, according to Rissew and Philip [supra], would have satisfied article 10 [a]). Instead, he sent it to a third party for service upon the defendant. However, even if plaintiff did send the process directly to defendant by registered mail, in my view, the word "send” does not encompass legal service. This is evident by the fact that the word "service” is used in every section of the treaty that prescribes methods of service, except article 10 (a). (See, Reynolds v Woosup Koh, supra, at 99-100; Ordmandy v Lynn, supra, at 955.)
In view of the deliberate and careful draftsmanship evident throughout the provisions of the Convention, I cannot agree with the simplistic approach of the First and Fourth Departments, that this was merely careless drafting. To the contrary, the choice of terms here was most deliberate and carefully worded. In my view, the approach and construction adopted by the Appellate Division, Third Department, applying the holding and rationale of Ordmandy (supra), is far more consistent with the intent which underlies the Hague Convention, and the purposes which the treaty sought to address.
In any event, plaintiff did not comply with any of the Hague Convention requirements insofar as they pertain to Israel, sufficient to confer personal jurisdiction over the defendant. Unlike the situation in Philip (supra), Israel did limit and modify the Convention provision, by permitting service of judicial documents only through the Directorate of the Courts, which was not done here. Therefore, in accordance with CPLR 5015 (a) (4), the default judgment against defendant, regarding equitable distribution, custody, support and visitation, must be vacated for lack of in personam jurisdiction.
It should be noted that this case differs from Klien v Klien (141 Misc 2d 174, 175), which held that service of process by someone authorized to make service by the laws of Israel was proper under CPLR 313. The court in Klien did not consider the Hague Convention, a treaty which supersedes the CPLR under the Supremacy Clause of the United States Constitution. (US Const, art VI, 2.) Thus, the determination in Klien is neither authoritative nor persuasive. And, aside from the foregoing, there was no proof offered in our case, either in the papers submitted, or in the lengthy hearing which was held, that the person who effected service in Israel was in fact authorized to serve process under the laws of that country. (See, CPLR 313.)
Even if proper service was effectuated, this court was without jurisdiction to decide the custody and visitation issues *789 that were brought in plaintiffs divorce petition, pursuant to the Uniform Child Custody Jurisdiction Act (UCCJA). (Domestic Relations Law §75 et seq.) This statute also precludes the court from exercising jurisdiction to modify the Israeli custody and visitation decrees. Two other relevant statutes, the International Child Abduction Act (ICAA), which is another Hague Convention treaty codified in the United States (42 USC § 11601 et seq.), and the Federal Parental Kidnaping Prevention Act (PKPA) (28 USC § 1738A), are not applicable to the instant matter. Neither party proceeded under the ICAA, which provides for the return of abducted children and for the enforcement of custody and visitation rights in other countries, or the PKPA, which was enacted to determine when one State should grant full faith and credit to child custody judgments from other States (28 USC § 1738A [a]). The PKPA does not have a provision recognizing foreign decrees because it was enacted to regulate interstate jurisdiction. (See, 28 USC § 1738A [b] [8].)
Under the UCCJA, which was enacted to determine whether New York has jurisdiction over a child custody/visitation issue, there is no jurisdiction because New York was not the home State of Ariella at the time the action was commenced, nor was it the home State six months prior to the time the action was commenced. (Domestic Relations Law § 75-d [1] [a] [i], [ii]; cf., Koons v Koons, 161 Misc 2d 842, 847-848.) Ariella had moved to Israel with her parents, approximately three years prior to when the plaintiff commenced the divorce action, and returned for only one summer in 1988. There is also no jurisdiction because Ariella does not have a significant connection to this State (Domestic Relations Law § 75-d [1] [b] [i]; see, Caronna v Caronna, 141 Misc 2d 834, 835-836); nor has she been physically present in this State by virtue of abandonment or an emergency (Domestic Relations Law § 75-d [1] [c] [i], [ii]). Ariella has been an Israeli citizen most of her life, does not have any friends or other close personal relationships in New York, has not attended school in New York, has not visited New York for extended periods of time, and does not intend to relocate to New York in the néar future. All her present and future care and education remains in Israel. (See, Domestic Relations Law § 75-d [1] [b] [ii]; McNally v McNally, 210 AD2d 940, 941; Matter of Swain v Vogt, 206 AD2d 703, 705.)
Furthermore, this court does not have jurisdiction under the UCCJA because New York would be an inconvenient forum to litigate since both mother and child permanently reside in *790 Israel. (See, Domestic Relations Law § 75-h [1]; see, Hellinger v Hellinger, 217 AD2d 490; McNally v McNally, supra, at 941; Swain v Vogt, supra, at 705; Matter of Tannoya v Tannoya, 128 AD2d 787, 788.) Finally, this court is without jurisdiction because the Rabbinical Court of Israel has asserted jurisdiction over the matter (Domestic Relations Law § 75-d [1] [d] [i]; see, Evans v Evans, 112 Misc 2d 537, 541) and, in light of the ongoing proceedings, appears to have no intention of relinquishing jurisdiction. (See, Domestic Relations Law § 75-g [1].)
Israel’s jurisdiction may be recognized by this court under the UCCJA, which grants recognition and enforcement to custody decrees from foreign countries "involving legal institutions similar in nature * * * if reasonable notice and opportunity to be heard were given to all affected persons”. (Domestic Relations Law § 75-w; see, Matter of Lotte U. v Leo U., 128 Misc 2d 896; Evans v Evans, supra, at 540-541.) In this case both parties were present and/or represented at the Rabbinical Court proceedings so they were afforded notice and an opportunity to be heard. Therefore, there is no basis to decline recognition of Israel’s jurisdiction under the UCCJA.
This matter is distinguishable from Koons v Koons (161 Misc 2d 842), wherein Justice Saxe held that, although there was a prior custody proceeding in Italy and, notwithstanding the provisions of the UCCJA, which granted recognition to foreign decrees, a foreign nation was not a State within the meaning of the UCCJA. (Koons v Koons, supra, at 847; see also, Matter of Massey v Massey, 89 AD2d 566, 567; Klien v Klien, supra, at 179.) The Koons court also held that Italy’s jurisdiction dissolved upon the commencement of divorce proceedings in New York, and that it was in the best interest of the child, who was approximately two years old at the time, for New York to assume jurisdiction. The court reasoned that the child’s departure from New York to live in Italy and Germany during his lifetime was not permanent.
Italy’s jurisdiction, however, dissolved upon commencement of divorce proceedings in New York, because the Italian court in which the prior proceeding took place had jurisdiction only over custody disputes in intact families, that is, not divorced or separated. (Koons v Koons, supra, at 848.) This differs substantially from Israel, where the Rabbinical Court has jurisdiction over all matrimonial matters, regardless of whether the family is intact or not. (Laws of State of Israel, Rabbinical Courts Jurisdiction [Marriage & Divorce] Law 5713-1953 [No. 83], §§ 1-6; see, Sandra S. v Glenn M. S., 133 Misc 2d 370, 372.) Also, Ari *791 ella, unlike the child in Koons, is now 12 years old and has not had any significant contact with New York. She has been living in Israel most of her life and does not have any plans to permanently reside in New York. Furthermore, the fact that the term "state” has not been defined to include foreign countries does not preclude the court from recognizing custody decrees under circumstances as defined in Domestic Relations Law § 75-w, particularly where comity is required.
In L. H. v Youth Welfare Off. (150 Misc 2d 490, 496-497), the court recognized a custody decree rendered in Germany, prior to the commencement of custody proceedings in New York, and declined to exercise jurisdiction. In that case, the child had little contact with New York and the proceedings in the German court comported with the due process provisions of our Federal and State Constitutions. Finding that it lacked jurisdiction under the UCCJA, the court there observed that the child’s only contact with New York was during the first months of her life. Thereafter, the entire family relocated to Germany, where the child had resided continuously and exclusively for more than 20 months.
Similarly, in Evans v Evans (112 Misc 2d, supra, at 542), the court declined to exercise jurisdiction because the case did not fall within any of the provisions of the UCCJA. The judgment that was issued in Israel prior to the commencement of the action in New York appeared to be a custody decree. The child and mother resided in Israel for two years prior to the filing of the petition and the father had lived in Georgia for at least three years prior to the filing of the petition, thus, making " '[t]he court in New York * * * foreign to all of them’ ”. (Evans v Evans, supra, at 542.)
With regard to the remaining branches of plaintiff’s motion and defendant’s cross motion, plaintiff’s request for recognition of the Rabbinical Court’s support orders is denied on the ground that there is no application pending in this court to enforce these judgments. (See, Domestic Relations Law § 236 [B] [9] [a]; § 244.) Furthermore, defendant’s request for a hearing on equitable distribution is denied. The court declines to exercise jurisdiction over this issue, which should more appropriately be addressed in the matrimonial proceedings currently before the Rabbinical Court of Israel. The parties, however, are not precluded from seeking to enforce or modify the Rabbinical Court’s equitable distribution decision in this court (see, Domestic Relations Law § 236 [B] [9] [a]; § 244) if interests in the State of New York are affected. Nor are they *792 precluded from seeking equitable distribution in this court (see, Domestic Relations Law § 236 [B]) if the Rabbinical Court does not address the distribution of property. (See, Braunstein v Braunstein, 114 AD2d 46, 53-54.) Finally, although plaintiff claims that religious divorce proceedings are pending in Israel and that the defendant has stalled the proceedings to prolong spousal support under religious law, plaintiff is directed to follow through with the Get to remove the barriers to defendant’s remarriage, as required by Domestic Relations Law § 253.
In summary, the judgment of divorce rendered in this court is sustained upon the ground that this court did have proper in rem jurisdiction over the marital status. The judgment issued insofar as it concerned equitable distribution, child custody, visitation, and child support, is vacated upon the ground of improper service. Defendant is not entitled to a hearing in this court on equitable distribution, and recognition of the Israeli support orders is denied. Furthermore, this court is without jurisdiction to modify the child custody/visitation orders issued in Israel, pursuant to the UCCJA. Finally, plaintiff is directed to follow through with the religious divorce proceedings in Israel and to provide defendant with a Get.
Settle order and amended judgment.