Filed 5/22/15  Vaile v. Porsboll CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| ROBERT SCOTLUND VAILE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CISILIE A. PORSBOLL,<br><br>    Defendant and Appellant. | A140465<br><br>(Sonoma County<br>Super. Ct. No. SFL-49802) |

**I.**

**INTRODUCTION**

This case arises out of a long-running child support dispute that has spawned litigation in California, Nevada, Norway, England, Texas, Virginia, Michigan and Kansas, in federal and state courts, including the Nevada Supreme Court, with attempts to involve the California Supreme Court and the United States Supreme Court. Unsurprisingly, the multiple jurisdictions have produced an array of conflicting support orders, with California and Kansas holding that a 2003 child support document from Norway governs the father's financial obligations, while Nevada continues to proclaim its 1998 support order controlling.  The underlying dispute concerns the proper application of the Uniform Interstate Family Support Act (UIFSA), adopted in California as Family Code section 4900[1] et seq.  (§ 4911.)  But we resolve the appeal on the basis that the California court did not have, and could not, acquire personal jurisdiction over

---

[1]  Statutory references are to the Family Code unless otherwise indicated.

1

Norwegian resident Cisilie Porsboll when it decided in November 2012 that the Norway order was controlling. Therefore, we reverse the Sonoma County Superior Court's order refusing to set aside the controlling order determination and remand with an instruction to dismiss the case.

## II.

### FACTUAL AND PROCEDURAL BACKGROUND

In 1989, Robert Scotlund Vaile, a United States citizen, met Porsboll in her native Norway when both were 20 years old. They returned to the United States together and were married in Utah in 1990. They settled in Ohio, where their two daughters were born in 1991 and 1995. The children have dual United States and Norwegian citizenship.

After Vaile finished graduate school in 1996, the family moved to Virginia, where Vaile was employed as an engineer. Vaile's employer transferred him to London in August 1997, and the family was living in London when the marriage broke down. The couple agreed to divorce in the spring of 1998.

In June 1998, fearing Vaile would try to take the children to the United States, Porsboll filed an action in a London court to prohibit removal of the children. On the day before the scheduled hearing, Vaile presented Porsboll with a 23-page separation agreement that covered, among other things, child custody, support and visitation, and also stipulated to their getting a divorce in Nevada, where Vaile's mother and stepfather were then living. Porsboll signed the agreement. The court in England entered an order granting Porsboll physical custody of both children and permission to remove them from the country. Vaile returned to the United States, and Porsboll took the children to Norway.

On July 14, 1998, five days after returning to the United States, Vaile signed a verified complaint asserting that he was "a resident of Nevada and that he had been physically present in Nevada for more than six weeks prior to the filing of the complaint." None of this was true. Eight days after signing the complaint, Vaile left Nevada, vacationed briefly in California, and then returned to his job in London. The complaint for divorce was filed in Las Vegas on August 7, 1998, with the parties'

2

separation agreement attached. A pro se answer signed by Porsboll was filed the same day. Three days later a divorce decree was entered by the Nevada family court without a hearing.[2] Porsboll was given initial custody of the children and child support was ordered in accordance with a formula contained in the separation agreement.[3] The agreement acknowledged that Porsboll would initially live in Norway with the children until at least July 1, 1999, and after that would live with the girls in the United States within 20 miles of Vaile's residence, which could be anywhere within the metropolitan area of seven named cities.

In November 1999, Porsboll informed Vaile that she planned to remarry. Vaile told her he was moving from London back to the United States and demanded that she and the children also relocate. Porsboll refused and initiated legal steps to be allowed to remain in Norway with the children.

Vaile then filed a motion in the Nevada family court seeking physical custody of the children. Before the court in Norway ruled, the Nevada court awarded custody to Vaile, while holding Porsboll in contempt of court for refusing to return with the children to the United States. The Nevada court's ruling was based on an in-court statement by Vaile that the children had lived "here" "all their lives." Vaile's lawyer also falsely told the Nevada family court the children "lived in Las Vegas prior to leaving."

In May 2000, Vaile took the Nevada custody order to Norway to reclaim the children. He did not file the order with any government body in Norway to have it enforced, however. Rather, he left the order with a desk clerk at a hotel where the children were staying with their mother and kidnapped them from the hotel. Vaile got

---

[2] The trial court was the Nevada District Court for the Eighth Judicial District, Family Court Division, Clark County. For ease of reference we shall call it the Nevada family court or some variant.

[3] The formula designated 25 percent of the parties' combined income for support of the children while both were minors and 18 percent when only one minor child remained. The noncustodial parent was to pay child support in an amount bearing the same relationship to the total amount of child support as that parent's income bore to the parties' combined income.

3

them out of the country despite Porsboll's efforts to stop him via the Norwegian police and courts. Vaile took the children back to the United States, where they settled on a farm in West Texas. After the kidnapping, Vaile paid no further child support to Porsboll until his salary was attached in July 2006.

It took Porsboll two years to regain custody of the children through the courts in Nevada and Texas. In September 2000, she filed in the Nevada family court motions seeking return of the children, and to set aside the "fraudulently obtained divorce." The Nevada family court acknowledged that its earlier custody order favoring Vaile had been based on misrepresentations but, exercising emergency custody jurisdiction, it left custody temporarily with Vaile.

Porsboll filed a petition for a writ of mandamus in the Nevada Supreme Court, challenging Nevada's subject matter and personal jurisdiction. (*Vaile v. Eighth Judicial Dist. Court* (2002) 118 Nev. 262, 265-266.) In April 2002, the Nevada Supreme Court held the family court lacked both personal and subject matter jurisdiction because Vaile's residency requirement had not been met. (*Id*. at p. 268.) The Nevada Supreme Court concluded that Vaile "had never lived in Nevada, and had not even been physically present in Nevada for the requisite six-week period," and his contrary statements in his verified complaint for divorce were "false." (*Id*. at pp. 268, 270.)

The court noted the children had never been to Nevada and held the child custody and visitation orders were made without jurisdiction and were void. (*Vaile v. Eighth Judicial District Court*, *supra*, 118 Nev. at p. 275.) However, because there was a "colorable case for jurisdiction," the court held the remainder of the divorce decree was voidable, but not void. (*Id*. at p. 272.) It implicitly found Vaile had voluntarily submitted to Nevada's jurisdiction by filing the complaint for divorce, and explicitly found Porsboll was estopped to deny Nevada's jurisdiction because her answer also falsely affirmed Vaile's residence in Nevada. (*Id*. at pp. 273-274.)

The court further concluded, or at least implied, that because the family court had "colorable personal jurisdiction over the parties and the subject matter of their marital status," both the divorce itself and the child support provision remained enforceable.

4

(*Vaile v. Eighth Judicial Dist. Court*, *supra*, 118 Nev. at p. 275.) It remanded the case to the family court with instruction to order the children returned to Norway. (*Id.* at p. 277.) The two children are now 20 and 24 years old, and custody is no longer in controversy, although the parties continue to litigate the issue of arrearages in past-due child support.[4]

After Porsboll and the children returned to Norway, a child support calculation was rendered by a Norwegian agency called Folketrygdkontoret for utenlandssaker, or "National Office for Social Insurance Affairs." That agency issued a document entitled "Child Support Order" dated March 17, 2003.[5] The document states that a copy was sent to both parties.[6]

Porsboll insists she did not seek a child support order in Norway. Rather, "the child support order issued in Norway was an administrative action taken by the child support agency pursuant to that country's 'welfare' laws to give the agency an entry on which to base requests to recoup money it was providing for the support of the children due to Mr. Vaile['s] refusing to support his children." Yet, the Norwegian order itself states that Porsboll "applied" on May 20, 2002, "for stipulation of child support." No statement under oath by any participant in the Norway proceedings explains how the

---

[4] While it appears that Vaile never paid child support in accordance with the formula in the separation agreement, he did pay $1,300 per month from the time of the divorce until approximately April 2000. Wage withholding commenced in July 2006, and as of May 2012, Vaile had paid a total of approximately $90,000 in child support.

[5] The exact nature of the Norwegian agency is not clear, but the caption suggests it was an administrative agency rather than a court of law. Still, the agency could potentially be a child support "tribunal" for purposes of UIFSA. (§ 4901, subd. (v).)

[6] We place no credence in Vaile's repeated assertion that Porsboll "intentionally" "concealed" the Norwegian orders from him. The Norwegian support order itself recites the agency's efforts to contact Vaile, including by means that appear to comply with The Hague Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (1965) 20 U.S.T. 361, T.I.A.S. No. 6638 (Hague Service Convention). According to the document, Vaile wrote a letter in November 2002 asking for an extension of time. He ultimately failed to provide the agency with any financial information, forcing it to make its support award based on the average income for an engineer in the United States, which, Porsboll alleged, was less than Vaile's actual income.

5

Norwegian order came into existence, and no expert testimony was introduced regarding the nature, origin or purpose of the Norwegian document or the procedures employed in Norway for issuing child support orders consistent with UIFSA.[7]

The child support amount was twice modified by the Norwegian National Office for Social Insurance Abroad. That agency's documents recite, "The question of child support can be handled by the national insurance Service or a Norwegian court of law b) [*sic*] if one of the parties or the child resides in Norway." There is no evidence that Vaile ever made support payments under the Norwegian orders.

In November 2007, Porsboll asked the Nevada family court to set a fixed amount of monthly child support based on Nevada statute, rather than on the formula in the 1998 separation agreement, and also to render into a judgment the arrearage owed for child support. The Nevada family court issued several temporary support orders, culminating in an order in October 2008 granting Porsboll the requested relief. The court calculated the arrearage based on a support obligation of $1,300 per month. (See fn. 4, *ante*.) Vaile appealed.

In late April 2008, Vaile was then living in Sonoma County. At that time, he was notified by a representative of the California Department of Child Support Services (DCSS) that Porsboll had requested the agency to "open . . . a child support case" against him. After Vaile's employer notified him that it intended to start salary withholding, Vaile sued his employer in San Francisco City and County Superior Court for abuse of process and conversion, also naming Porsboll and her lawyers as defendants. In March 2010 the San Francisco court dismissed the action against Porsboll for lack of personal jurisdiction, and stayed the action against her lawyers on grounds of forum

---

[7] Norway has been a foreign reciprocating country under 42 U.S.C. § 659a since June 10, 2002. (Notice of Declaration of Foreign Countries as Reciprocating Countries for the Enforcement of Family Support (Maintenance) Obligations, 73 Fed. Reg. 72555 (Nov. 28, 2008); see generally, *Willmer v. Willmer* (2006) 144 Cal.App.4th 951, 956-957.)

6

non conveniens, deferring to the Nevada courts.  Vaile's appeal to this court  was dismissed.

In February 2010, Vaile filed a request for a hearing in Sonoma County Superior Court on the earnings assignment.  (§ 4945.)  On the same date he also filed a separate request for registration in the Sonoma County court, attaching several of the Nevada child support orders.  He sought to register only the 1998 Nevada order, claiming the later modifications were made without UIFSA modification jurisdiction.  He asked the court to change the "venue" of the support proceedings to California, to declare all of the Nevada orders void for lack of personal and subject matter jurisdiction, or alternatively, to register and modify the 1998 Nevada order.  Porsboll was served with the registration documents only by mail in Norway.

A hearing was held in March 2010, not attended by Porsboll or her counsel, but attended by an attorney from DCSS, which had intervened in the action.  (See § 17400, subd. (k).)  The DCSS attorney told the court the case should be transferred to Nevada, reciting her discussion with Vaile that the wage garnishment issue would be decided in California, while other issues would be decided in Nevada.

In April 2010, the Nevada family court held that Vaile had no valid cause of action.  It ordered attachment of Vaile's wages and awarded Porsboll attorney fees.

On September 27, 2010, the Sonoma County court issued an order vacating Vaile's attempted registration of the 1998 Nevada order.  It held Nevada did not have continuing, exclusive jurisdiction to modify its 1998 support order, so the more recent Nevada support orders were not in compliance with UIFSA or the federal Full Faith and Credit for Child Support Orders Act (FFCCSOA) (28 U.S.C. § 1738B).  The court also refused to modify the 1998 Nevada order, concluding that California had no jurisdiction to do so.  Vaile's remedies, it said, were "elsewhere."

On January 26, 2012, the Nevada Supreme Court issued its opinion on Vaile's appeal of the October 2008 order, which addressed whether the Nevada family court could properly enforce or modify its 1998 child support order.  (*Vaile v. Porsboll* (2012)

7

268 P.3d 1272.) Without evidence of the Norwegian orders before it,[8] the court concluded the 1998 order could still be enforced. (*Id.* at pp. 1274-1275; Nev. Rev. Stat. Ann. § 130.207(1) (2014); § 4911.) It held, however, that Nevada did not have modification jurisdiction because the parties did not reside in Nevada and had not consented to Nevada's modification jurisdiction. (See Nev. Rev. Stat. Ann. § 130.205(1)(a), (b) (2014); §§ 4909, 4960; *In re Marriage of Haugh* (2014) 225 Cal.App.4th 963, 970-971.) Because the October 2008 order constituted an unauthorized modification, it was unenforceable. (*Vaile v. Porsboll*, *supra*, 268 P.3d at pp. 1275-1278.)

The Nevada Supreme Court remanded the matter to the Nevada family court to calculate the amount due in arrearage, interest and penalties using the formula contained in the 1998 support order. It further ordered the family court to determine whether a Norwegian child support order "exists and assess its bearing, if any, on the district court's enforcement of the Nevada support order." (*Vaile v. Porsboll*, *supra*, 268 P.3d at p. 1275, fn. 4.) Although the court's remand did not instruct the family court to make a controlling order determination under section 207 of UIFSA, that was its practical effect.

In March 2012, Vaile registered the Norwegian orders in the Nevada family court. On July 10, 2012, the Nevada family court found it unnecessary to determine which order was "controlling" because there was only one UIFSA-compliant child support order, not two. (See § 4911, subd. (a); Nev. Rev. Stat. Ann. § 130.207(1) (2014).) The court held the Norwegian orders were not issued in compliance with UIFSA's requirements for modification jurisdiction, and thus had "no bearing" on the enforceability of the 1998 Nevada order. It ordered Vaile's "notice of controlling Norwegian child support order" stricken from the record.

The Nevada family court recalculated Vaile's arrearage applying the formula from the parties' separation agreement. It concluded the principal amount of child support

---

**8** The Norwegian support orders were alluded to by the parties but were not before the court.

8

arrears, after all payments were credited, was more than $126,000, with interest of more than $62,000, for a total of more than $188,000. Vaile was held in contempt for failing to pay child support from April 2000 to July 2006 and was sanctioned $38,000. He was ordered to pay $15,000 in attorney fees to Porsboll. Finally, Vaile was ordered to pay $2,870 per month going forward until all current support and all arrearages were paid.

Vaile's petition to the Nevada Supreme Court for a writ of mandamus was denied. He also appealed the July 2012 family court order. The Nevada Supreme Court ordered the entire trial record transmitted to it (docket no. 61415), and on January 6, 2015, that court ordered the matter transferred to the newly created Court of Appeals for decision.

Meanwhile, in May 2012, Vaile had filed a "notice of motion" in the Sonoma County docket, which attached points and authorities requesting registration of the Norwegian support orders and a determination that they were "controlling" under UIFSA. (§ 4911.) Again, Porsboll was served by mail in Norway.

On November 1, 2012, despite having been made aware of the ongoing proceedings in Nevada, the court in Sonoma County entered its order finding the Norwegian orders were controlling. (§ 4911.) Given the payments Vaile had made, the Sonoma County court calculated he had a remaining support arrearage of only $3,919 under the Norwegian orders, considerably less than he owed under the Nevada decree. The court also ordered: "No agency, enforcement officer, or employer shall collect or demand child support from [Vaile] contrary to this order, or based on child support orders other than the 2003 Norwegian child support order registered in Sonoma County pursuant to this order." There is no proof that the November 1, 2012 order was served on Porsboll.

Also in November 2012, Vaile moved to Kansas. He registered the California order in Kansas and obtained a similar order from a Kansas court, which held the California order (and thus the Norwegian order) was controlling. In February 2013, the Kansas court concluded, without Porsboll's input, that "the Nevada court lost jurisdiction in this matter when the Norwegian order sought by Porsboll in Norway became effective on April 1, 2002." The Kansas order was later filed in the Nevada family court. In the

9

meantime, in January 2013, the Nevada family court had found Vaile in contempt and issued a bench warrant for his arrest.

On June 10, 2013, Porsboll filed a request in Sonoma County for an order setting aside the controlling order determination of November 1, 2012, accompanied by the declaration of her attorney setting forth the history of the dispute and attaching multiple exhibits. She argued: (1) the California court had no personal jurisdiction over her; (2) Nevada retained jurisdiction to enforce its 1998 order; and (3) the doctrines of comity and abstention counseled deference to the Nevada courts. The motion was denied by written order and findings on September 11, 2013. Porsboll filed a motion for reconsideration on October 1, 2013, supported by additional exhibits. Porsboll invoked both Code of Civil Procedure section 473 and the court's inherent power to reconsider its own prior determinations.[9] Porsboll appeals the denial of her request for reconsideration.

## III.

## DISCUSSION

### A. The parties' contentions

Porsboll raises the following issues on appeal: (1) the court that issued the November 2012 order lacked personal jurisdiction over her; (2) it lacked subject matter jurisdiction over the controversy; (3) the Sonoma County court's earlier September 2010 order dismissing registration of the Nevada orders for lack of jurisdiction was a final order binding on the same court; (4) Nevada had continuing jurisdiction over issues of child support, whereas Norway did not; and (5) as a matter of comity, abstention, res judicata, or full faith and credit, the California court should have deferred to the courts in Nevada. Due to these deficiencies, she argues, the November 2012 order should have been set aside at her request, and her request for reconsideration should have been granted.

---

[9] Vaile claims section 3691 governs this appeal. We have considered that section and conclude it does not prevent our reversal of the order here under review for lack of personal jurisdiction over Porsboll in the controlling order proceedings. (See *County of San Diego v. Gorham* (2010) 186 Cal.App.4th 1215, 1228-1229, 1232 (*Gorham*).)

Because we resolve this case based on lack of personal jurisdiction, we address that issue only. Porsboll contends the court in Sonoma County lacked personal jurisdiction over her in part because she was not properly served in compliance with the Hague Service Convention. More fundamentally, she claims she did not have the minimum contacts with the forum necessary for exercise of jurisdiction over her in compliance with due process. (*Kulko v. Superior Court* (1978) 436 U.S. 84, 92-94 (*Kulko*).)

Vaile responds that: (1) service in accordance with the Hague Service Convention was not required; (2) personal jurisdiction over Porsboll was not required; and (3) even assuming personal jurisdiction over Porsboll were required, she voluntarily submitted to California's jurisdiction by (a) seeking the assistance of Solano County DCSS in having the Nevada support order enforced in California, (b) seeking to attach Vaile's salary in California, and (c) making arguments in her motion to set aside the November 2012 order that amounted to a general appearance rather than a special appearance.

## B. Standards of review

A motion for reconsideration is ordinarily reviewed for abuse of discretion. (*New York Times Co. v. Superior Court* (2005) 135 Cal.App.4th 206, 212; *Glade v. Glade* (1995) 38 Cal.App.4th 1441, 1457.) Here, however, the nature of the ruling for which reconsideration was sought requires a different standard of review. A motion to set aside an order filed more than six months after the order was entered may be granted on statutory grounds if the underlying order was void on its face (Code Civ. Proc., § 473, subd. (d); *Dill v. Berquist Construction Co.* (1994) 24 Cal.App.4th 1426, 1441), which is an issue of law subject to de novo review.[10] (*Ramos v. Homeward Residential, Inc.* (2014) 223 Cal.App.4th 1434, 1440-1441 & fn. 5 (*Ramos*); *Cruz v. Fagor America, Inc.* (2007) 146 Cal.App.4th 488, 495-496 (*Cruz*).)

---

[10] To be void on its face, the error must appear in the judgment roll. (*Ramos*, *supra*, 223 Cal.App.4th at p. 1441; *Cruz*, *supra*, 146 Cal.App.4th at p. 496.) Because Porsboll never appeared in the action, the judgment roll included the proof of service. (Code Civ. Proc., § 670, subd. (a).)

11

A default order made without proper service of process, even if proved by extrinsic evidence, is likewise void and may be challenged as a violation of due process after the six-month period.  (*Gorham*, *supra*, 186 Cal.App.4th at pp. 1226-1228.)  Such a determination, to the extent it does not turn on the trial court's resolution of factual issues, is subject to de novo review.  (*Id*. at pp. 1228-1229; *BBA Aviation PLC v. Superior Court* (2010) 190 Cal.App.4th 421, 429.)  If the facts are disputed, we review the lower court's factual determinations for substantial evidence, but still review its legal conclusions de novo.  (*BBA Aviation PLC v. Superior Court*, *supra*, 190 Cal.App.4th at p. 429.)  Similarly any issue of statutory interpretation is subject to de novo review.  (*In re Marriage of Pearlstein* (2006) 137 Cal.App.4th 1361, 1371-1372; *In re Marriage of Crosby & Grooms* (2004) 116 Cal.App.4th 201, 205.)  A motion to set aside a prior order or judgment may also be granted after the six-month period for equitable reasons and will be reviewed for abuse of discretion.  (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 981.)

**C. UIFSA and federal laws regarding enforcement of child support orders**

*1. UIFSA*

We begin with a brief overview of UIFSA, which governs the underlying dispute. UIFSA was intended to establish an efficient, fair and uniform means of enforcing support orders across jurisdictional lines.  One of its core concepts is that only one support order may be in force at any given time, which is enforceable but not modifiable by other states.  (9 U. Laws Ann. (2005) Interstate Family Support Act (1996) Prefatory Note to Background Information, p. 284; *de Leon v. Jenkins* (2006) 143 Cal.App.4th 118, 124.)  This was a significant departure from earlier law, under which multiple and conflicting child support orders were both possible and problematic.  (9 U. Laws Ann., *supra*, Prefatory Note to Establishing a Support Order, p. 287; see also Pub.L. 103-383 (Oct. 20, 1994) § 2, 108 Stat. 4063.)  UIFSA was unanimously approved by the National Conference of Commissioners on Uniform State Laws in August of 1992, and has since

12

been adopted by all 50 states.[11] (9 U. Laws Ann., *supra*, Interstate Family Support Act (1991) Prefatory Note to Background Information, pp. 161-162.)

UIFSA includes several jurisdictional provisions designed to work together to implement the one-order system. Once personal jurisdiction has been acquired over the parties, it continues for the life of the order (§ 4906). A state or country[12] that acquires personal and subject matter jurisdiction to issue an initial support order under UIFSA has continuing and exclusive jurisdiction to modify that order until all parties and any children for whose benefit the order was issued have left the state or the parties have consented to assumption of jurisdiction by a different state (§§ 4909, 4960). Even if all parties and children have left the issuing state so that it loses jurisdiction to modify a support order, it retains continuing jurisdiction to enforce the order (§ 4910); (4) a state other than an issuing state may (indeed, must) enforce an out-of-state support order if it was issued in accordance with UIFSA's jurisdictional requirements or a "substantially similar" law (§ 4909, subds. (b), (c), 4952, subd. (c)). But, the court may not modify an out-of-state order unless it has acquired modification jurisdiction under the provisions of UIFSA (§§ 4909, subd. (d), 4952, 4960).

---

[11] UIFSA was amended in 1996, 2001 and 2008. (9 U. Laws Ann., *supra*, Interstate Family Support Act (2001), Prefatory Note to Background Information, pp. 161-162, (2014 Supp.) Interstate Family Support Act (2008), Prefatory Note to History of Uniform Family Support Acts, pp. 100-102.) California currently follows the 1996 version, while Nevada now follows the 2001 version, with the 2008 version adopted but not yet effective. (9 U. Laws Ann. (2014 Supp.) Uniform Interstate Family Support Act (2008), p. 99; see History and Statutory Notes, 29F, pt. 2, West's Ann. Fam. Code (2013 ed.) preceding § 4900, p. 6; Nev. Rev. Stat. Ann. § 130.0902 (2014), Ed. Note.) California adopted the 2001 version in 2002, but its effective date is contingent upon acts by the federal government that apparently have not yet been taken. (*In re Marriage of Haugh*, *supra*, 225 Cal.App.4th at p. 968, fn. 2.) California has not yet adopted the 2008 version of UIFSA.

[12] "State" is defined to include foreign countries that have procedures for issuance and enforcement of support orders "substantially similar" to the procedures under UIFSA. (§ 4901, subd. (s)(2).) Federal law provides that the federal government may establish a reciprocating agreement with any foreign country. (42 U.S.C. § 659a(a).)

Modification jurisdiction is proper only where (a) the parties have agreed to have the tribunal assume modification jurisdiction (§ 4960, subd. (a)(2)) , or (b) the obligor, individual obligee and children have all left the issuing jurisdiction, a nonresident seeks modification in the forum state, and the other party is subject to personal jurisdiction in the forum state.  (§ 4960, subd. (a)(1).)  In either case, the preexisting order must first be registered with the appropriate tribunal in the state where modification is sought.  (§ 4958.)  Once a proper modification has been ordered, that tribunal assumes continuing, exclusive jurisdiction over the question of child support, and the preexisting order is unenforceable.  (§ 4960, subd. (d).)

These provisions strictly limit the power of courts to modify preexisting support orders from other states, thereby helping to ensure that only one enforceable order prevails at any given time.  The registration requirement puts the modifying tribunal on notice that it is being asked to modify another state's order, not to issue an initial order.  The tribunal will thus be alerted to make sure it has jurisdiction under UIFSA to modify a preexisting order.

In addition, UIFSA forces the party who seeks modification to " 'play an away game on the other party's home field' " so as to ensure the modifying state has personal jurisdiction over both parties.  (9 U. Laws Ann., Interstate Family Support Act (2001) com. foll. § 611, p. 256.)  In practice, this usually means the parent seeking modification must make any request for modification in the state of the other parent's residence.  Even under preexisting uniform laws a modifying order had to be identified on its face as such, or it was not enforceable.  (*In re Marriage of Gerkin* (2008) 161 Cal.App.4th 604, 617 [enforceable under prior law only "if the modification was litigated and noted explicitly on the new order"]; *Lundahl v. Telford* (2004) 116 Cal.App.4th 305, 317-318 [applying UIFSA and comparing its procedures to prior law].)

A modification not issued in accordance with UIFSA jurisdictional principles is not entitled to enforcement.  (§ 4952, subd. (c) [state must enforce out-of-state order "if the issuing tribunal had jurisdiction"].)  "[U]nder the one-order-at-a-time system, the validity and enforceability of the controlling order continues unabated until it is fully

14

complied with, *unless it is replaced by a modified order issued in accordance with the standards established by [UIFSA].* That is, even if the individual parties and the child no longer reside in the issuing State, the controlling order remains in effect and *may be enforced by the issuing State or any responding State* without regard to the fact that the potential for its modification and replacement exists." (9 U. Laws Ann., Interstate Family Support Act (2001), com., § 206, p. 196, italics added; accord, Uniform Interstate Family Support Act Com. (2001), 29F, Pt. 2, West's Ann. Fam. Code (2013 ed.) foll. § 4910, pp. 50-51.)

### 2. *Federal Law*

Federal law specifically requires state adoption of UIFSA in order to receive certain federal funds. (42 U.S.C. § 666(f); 9 U. Laws Ann., Interstate Family Support Act (1996) Prefatory Note to Background Information, pp. 284-285; see generally Social Security Act Title IV-D, 42 U.S.C. §§ 651-669b (Title IV-D).) One reason for the federal law was to lighten the public burden of supporting children whose parents were not supporting them. (42 U.S.C. §§ 651, 652; § 17400, subd. (a).) The federal legislation requires states to create or designate an organizational unit devoted to collection and distribution of child support payments. (42 U.S.C. § 654(3), (4).) Only support orders "issued by a court or an administrative agency of competent jurisdiction" qualify for enforcement under Title IV-D. (42 U.S.C. § 653(p).)

### 3. *California Law*

In California, DCSS was established in 1999 to more effectively administer the state's Title IV-D program. (§ 17303, subd. (a).) DCSS and its local child support agencies (LCSA) are authorized broadly to establish, modify and enforce child support orders and to collect and distribute child support payments, including by enforcement of out-of-state support orders. (42 U.S.C. §§ 651, 654(4)(A)(i), (ii), 654b; §§ 4921, 17200, 17202, 17208, 17400, subd. (a), 17500.) The law requires LCSA's to provide services to assist members of the public, including both recipients of public assistance and families whose children have never received public assistance, in determining parentage and locating noncompliant parents, as well as in collecting child support payments.

15

(42 U.S.C. §§ 651, 654A(8); § 17400, subd. (a).) Child support agencies are expected to work cooperatively with other states to enforce child support orders against obligors located within their states. (42 U.S.C. § 654A(9).)

An LCSA may initiate court action to establish an initial child support order, "to increase an existing child support order," or to respond to a motion "brought by an obligor parent to decrease an existing child support order." (§ 17400, subd. (h)(2), (3).) It is not, however, authorized to seek independently an order to decrease an existing child support order. An LCSA may also "intervene . . . in any action under this code, or other proceeding in which child support is an issue," as it has done in this case. (§ 17400, subd. (k).)

An LCSA is also authorized to enforce child support orders by nonjudicial means, such as wage withholding (§ 17400, subd. (j)(1)), tax refund interception (42 U.S.C. § 664), withholding of unemployment benefits (§ 17518), administrative levies on bank accounts (§§ 17453-17456), suspension of licenses (§ 17520), placing holds on passports (42 U.S.C. § 652(k)), and other collection methods. (California Child and Spousal Support: Establishing, Modifying and Enforcing (CEB 2010) §§ 10.2, 10.6-10.15.) It must take such action, if requested, on behalf of both children who receive public assistance and those who do not and never have. (§ 17400, subd. (a); 42 U.S.C. § 651.) Indeed, an LCSA is required to initially use any authorized "administrative procedure" to enforce an out-of-state child support order without registering it. (§ 4946, subd. (b).)

In addition to the foregoing, Congress enacted the FFCCSOA in 1994 to regulate enforcement of child support orders across state boundaries. Within the United States, an out-of-state child support order that purports to modify an earlier support order is enforceable only to the extent it complies with the jurisdictional requirements for modification under FFCCSOA, which closely track the requirements of UIFSA, including that a party seeking modification must file in a state that has personal jurisdiction over the opposing party and must register the preexisting order prior to seeking modification. (See 28 U.S.C. § 1738B(a), (c), (e), (f), (i); *Holdaway-Foster v. Brunell* (Nev. 2014) 330 P.3d 471, 473-474.)

16

### 4. *The conflicting California and Nevada rulings on enforceability of the Norwegian orders.*

Under UIFSA, when more than one support order has been issued, a request may be filed in an appropriate tribunal in the state of residence of either the obligor or individual obligee for an order determining which order is "controlling." (§ 4911.) Such a determination is necessary to effectuate UIFSA's one-order policy. In theory, however, there should be no reason to use this provision in cases where the support orders both were issued purportedly in compliance with UIFSA, since UIFSA contains jurisdictional limitations designed to prevent the issuance of competing orders. In fact, the controlling order provision was included in UIFSA for the express purpose of resolving priority of preexisting conflicting orders issued under prior law. (Uniform Family Support Act Com. (2001), 29F, Pt. 2, West's Ann. Fam. Code (2013 ed.) foll. § 4911, pp. 60-61.)

The jurisdictional rules under UIFSA makes it appropriate for a court considering a controlling order determination to inquire into whether the tribunals that made the vying support orders had jurisdiction under UIFSA to do so. (See *Stone v. Davis* (2007) 148 Cal.App.4th 596, 602 [concluding state that issued subsequent support order did not have modification jurisdiction under UIFSA].) As discussed, the Nevada Supreme Court has already decided that its state's 1998 support order is enforceable.

When the case was remanded to the Nevada family court, that court looked into the propriety of Norway's assertion of modification jurisdiction when it issued its July 2012 order. This was the first order to consider the question of the enforceability of Norway's orders under UIFSA. The Nevada family court concluded that Norway had no proper modification jurisdiction under UIFSA. It reasoned that the agency in Norway could only have validly assumed modification jurisdiction if either (1) Vaile as a nonresident of Norway had petitioned for modification in Norway; or (2) both parties had filed written consents in the Nevada court allowing the Norway tribunal to modify the child support order and assume jurisdiction. (Nev. Rev. Stat. Ann. § 130.611(1)(a), (b) (2014); § 4960, subd. (a)(1), (2).) Neither of those provisions applied because it was Porsboll, not Vaile, who had sought the Norwegian orders, and the parties never agreed

17

to jurisdiction in Norway.[13]  Thus, the Nevada family court enforced the 1998 Nevada support order.

Yet, four months later, the Sonoma County court appears to have accepted the Norwegian orders at face value, without examining whether the Norwegian agency had properly assumed modification jurisdiction under UIFSA.  It proceeded directly to the question of which order should control and ruled in favor of the Norwegian orders because (1) Norway was the children's home state; (2) the Nevada family court did not have continuing jurisdiction to modify the 1998 child support order; and (3) Norway had "continuing and exclusive jurisdiction."

Of course, Porsboll was not present or represented by counsel so as to alert the court to the potential jurisdictional defects in Norway.  Because we conclude that the Sonoma County court did not have personal jurisdiction over her when it made its controlling order determination, we need not decide whether the Norwegian orders were enforceable in California.

### D. Personal jurisdiction over Porsboll was required for a "controlling order" determination under section 4911.

At the most fundamental level, Vaile flatly asserts that personal jurisdiction over Porsboll was not required, despite the fact that his request for a controlling order determination sought to reduce the past-due child support owed to Porsboll.  Precisely because the decision on such a motion will generally benefit one parent and adversely affect the other, the request must be made in a tribunal having personal jurisdiction over both parties.

Section 4911, subdivision (c) requires a party seeking a controlling order determination to give "notice of the request to each party whose rights may be affected

---

**13**  We note, as well, there is no evidence to suggest that Porsboll registered the 1998 Nevada support order in Norway before the Norwegian agency rendered its support order, as would have been required under UIFSA for a valid modification.  (§ 4958; UIFSA § 609.)  She explained under oath that she believed the Nevada decree was void at that time based on the Nevada Supreme Court's opinion in April 2002.

by the determination." Thus, a party who has not sought a controlling order determination and "may be affected" by it is entitled to notice and an opportunity to be heard.

This requirement is no doubt intended in part to ensure the court has jurisdiction over the parties. Section 4911, subdivision (b) currently in force provides: "If a proceeding is brought under this chapter, and two or more child support orders have been issued by tribunals of this state or another state with regard to the same obligor and child, a tribunal of this state shall apply the following rules in determining which order to recognize for purposes of continuing, exclusive jurisdiction[.]" It then lists the rules that must be followed in making the controlling order determination. Significantly, the 2002 version of section 4911 (not yet in effect; see fn. 11, *ante*) added language making it clear that such a determination may only be made if the court can acquire personal jurisdiction over both parties: "If a proceeding is brought under this chapter, and two or more child support orders have been issued by tribunals of this state or another state with regard to the same obligor and same child, a tribunal of this state *having personal jurisdiction over both the obligor and individual obligee* shall apply the following rules and by order shall determine which order controls," and then lists the relevant factors. (§ 4911, as amended 2002, operative date contingent, italics added.)

We are confident the not-yet-operative 2002 amendment to section 4911 merely clarified a requirement already existing in the then-current version. This view is confirmed by the official comment to UIFSA section 207 (correlative to § 4911): "The 2001 amendment to Subsection (b) [of section 207] *clarifies* that a tribunal requested to sort out the multiple orders and determine which one will be prospectively controlling of future payments *must have personal jurisdiction* over the litigants in order to ensure that its decision is binding on all concerned. For UIFSA to function, one order must be denominated as the controlling order, and its issuing tribunal must be recognized as having continuing, exclusive jurisdiction." (Uniform Interstate Family Support Act Com. (2001), 29F, pt. 2, West's Ann. Fam. Code, § 4911, p. 61, italics added; see generally *In re Marriage of Crosby & Grooms*, *supra*, 116 Cal.App.4th at p. 206, fn. 3 [noting

relevance of Commissioners' comments]; *Smith v. Superior Court* (1977) 68 Cal.App.3d 457, 463 [Commissioners' comments entitled to " ' "substantial weight in construing the statutes" ' "].)

This is dispositive of Vaile's claim. His contrary position is untenable.

### E. Porsboll was not properly served in Norway

Vaile states without elaboration that Porsboll was "properly served," yet he has made no effort to show he complied with the Hague Service Convention. The proof of service on the controlling order request shows that Vaile served Porsboll by mail in Norway. Likewise, the earlier registration action showed only service by mail in Norway.

Vaile argues that compliance with the Hague Service Convention is not required in UIFSA "registration" actions, apparently suggesting we treat his "motion" for a controlling order determination as a continuation of his earlier vacated "registration" action, rather than an initial filing. He cites no case to support his position. We conclude service by mail in Norway was inadequate, especially because Vaile's intervening attempt to register and modify the Nevada orders in California had been vacated.

The Hague Service Convention requires each member nation to designate a central authority to receive documents that a foreign party wants to serve on one of its residents. That central authority then effectuates service on its resident in accordance with local law and returns a proof of service. (Hague Service Convention, arts. 2, 5 & 6; see generally, *Volkswagenwerk Aktiengesellschaft v. Schlunk* (1988) 486 U.S. 694, 698.) When a party has not previously appeared in an action, service of process on a resident of a member nation in a civil or commercial matter must comply with the Hague Service Convention.[14] (Code Civ. Proc., § 413.10, subd. (c); see *In re Vanessa Q.* (2010) 187 Cal.App.4th 128,

---

[14] Norway is a signatory of the Hague Service Convention. <http://www.hcch.net/ index_en.php?act=conventions.status&cid=17> (as of May 22, 2015.) It has objected to article 10, which means service by ordinary mail is not authorized. (<www.hcch.net/index_en. php?act=text.display&tid=44> ("Table Reflecting Applicability of Articles 8(2), 10(A)(B) and (C), 15(2) and 16(3) of The Hague Service Convention" [as of May 22, 2015].)

134-136; *Dahya v. Second Judicial Dist. Court* (2001) 117 Nev. 208, 211-213.) A party's actual knowledge of the proceeding, without proper service, does not confer personal jurisdiction. (*Lebel v. Mai* (2012) 210 Cal.App.4th 1154, 1160-1161.)

The parties have not cited and our research has not disclosed any case deciding whether a request for a controlling order determination must be served in accordance with the Hague Service Convention. (But see *Zwerling v. Zwerling* (N.Y. Sup. 1995) 167 Misc.2d 782, 785-786, 636 N.Y.S.2d 595, 598-599 [compliance with Hague Service Convention necessary in divorce proceeding for purpose of child support].) Although the answer seems to depend on the circumstances in which the controlling order determination is requested, we conclude such compliance was required here because the request for a controlling order determination was a new request for relief by Vaile as to which notice was expressly required and personal jurisdiction over Porsboll had not previously been established.

The closest analogy we have found is to dependency proceedings, where it has been generally recognized that the initial petition filed in the action—the document that summons the parties into court—must be served in accordance with the Hague Service Convention (*In re Vanessa Q.*, *supra*, 187 Cal.App.4th at pp. 134-136; *In re Alyssa F.* (2003) 112 Cal.App.4th 846, 852 [failure to comply "renders all subsequent proceedings void" as to the improperly served party]; *In re Jorge G.* (2008) 164 Cal.App.4th 125, 134), whereas later documents filed in the same action after personal jurisdiction over the parties has been acquired may be served by less formal means (*Kern County Dept. of Human Services v. Superior Court* (2010) 187 Cal.App.4th 302, 309-311 [personal jurisdiction acquired through personal appearance at detention hearing; court not required to comply with Hague Service Convention for subsequent and supplemental petitions]; *In re Jennifer O.* (2010) 184 Cal.App.4th 539, 545-548 [where jurisdiction over father was obtained by general appearance, not necessary to comply with serve him in Mexico in accordance with Hague Service Convention with notice of subsequent periodic review hearings].) This is true even though in dependency actions "there is no service of process in the technical sense." (*Id*. at p. 547.)

21

But even if Vaile were correct that compliance with the Hague Service Convention is not required in the case of a simple registration and enforcement action,[15] his motion to make a controlling order determination was more: it was a new request for relief that carried with it the prospect of adversely affecting Porsboll's rights. As such, it required proper international service to acquire jurisdiction over Porsboll. Because the defect in service was apparent from the judgment roll, the court erred as a matter of law in denying the request to set aside the November 1, 2012 order, and reversal is required. (*Honda Motor Co., Ltd. v. Superior Court* (1992) 10 Cal.App.4th 1043, 1048.) Even if extrinsic evidence were required to show the lack of proper service, the default order would have to be set aside. (*Gorham*, *supra*, 186 Cal.App.4th at pp. 1226-1227.)

**F. California did not have general or specific personal jurisdiction over Porsboll**

*1. The Sonoma County court did not have general jurisdiction over Porsboll.*

We proceed beyond the question of improper service because Vaile contends Porsboll's actions subjected her to personal jurisdiction in California regardless of whether she was properly served. We conclude Porsboll had insufficient contacts with California to allow the Sonoma County court to assert jurisdiction over her, and even if her contacts were deemed sufficient to subject her to specific personal jurisdiction, there are strong public policy reasons for declining to assume jurisdiction.

"Personal jurisdiction may be either general or specific. A nonresident defendant may be subject to the general jurisdiction of the forum if his or her contacts in the forum state are 'substantial . . . continuous and systematic.' [Citations.] In such a case, 'it is not necessary that the specific cause of action alleged be connected with the defendant's

---

[15] When enforcement of an out-of-state support order is the only remedy sought, the parties have already had their day in court when the order was issued. Therefore, "an enforcement remedy may be summarily invoked" (9 U. Laws Ann., *supra*, Interstate Family Support Act (1992) com. foll. § 611, p. 514), with or without prior registration, and with or without personal jurisdiction over the obligor. (*Gingold v. Gingold* (1984) 161 Cal.App.3d 1177, 1183 [decided under prior law].) "On the other hand, modification of an existing order presupposes a change in the rights of the parties," and UIFSA therefore imposes "explicit and restrictive" jurisdictional requirements to ensure personal jurisdiction over both parties. (9 U. Laws Ann., *supra*, com. foll. § 611, p. 514.)

22

business relationship to the forum.' [Citations.] Such a defendant's contacts with the forum are so wide-ranging that they take the place of physical presence in the forum as a basis for jurisdiction. [Citation.]" (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 445-446, italics omitted (*Vons Companies*).)

The requirement of minimum contacts with the forum must be met if a court's order is to comply with due process. (*Kulko*, *supra*, 436 U.S. at p. 94; *Internat. Shoe Co. v. Washington* (1945) 326 U.S. 310, 316-317 (*Internat. Shoe*).) Thus, a New York resident who had never lived in or traveled to California, except to be married here nearly 20 years earlier, was not subject to California's jurisdiction merely because he permitted his children to live here with his ex-wife. (*Kulko*, *supra*, 436 U.S. at p. 94.)

Likewise, it is abundantly clear that Porsboll did not subject herself to general personal jurisdiction in California. She never lived in California, never traveled to California, and never had any other contacts with this state, except to enforce her Nevada judgment here administratively. Without such minimal contacts, exercising general jurisdiction over her would have violated due process. (*Kulko*, *supra*, 436 U.S. at pp. 91-92.)

### 2. *Porsboll's efforts to have the Nevada order enforced by non-judicial means in California and her efforts to attach Vaile's salary here did not subject her to specific personal jurisdiction in California.*

A closer question is whether Porsboll voluntarily submitted to the specific jurisdiction of California by seeking the assistance of DCSS/LCSA in enforcing the March 20, 2008 Nevada support order. "If the nonresident defendant does not have substantial and systematic contacts in the forum sufficient to establish general jurisdiction, he or she still may be subject to the *specific* jurisdiction of the forum, if the defendant has purposefully availed himself or herself of forum benefits [citation], and the 'controversy is related to or "arises out of" a defendant's contacts with the forum.' [Citations.]" (*Vons Companies*, *supra*, 14 Cal.4th at p. 446, original italics.) "[T]he purposeful availment prong is only satisfied when the defendant ' "purposefully and voluntarily directs his activities toward the forum so that he should expect, by virtue of

23

the benefit he receives, to be subject to the court's jurisdiction based on" his contacts with the forum.' [Citation.]" (*Shisler v. Sanfer Sports Cars, Inc.* (2006) 146 Cal.App.4th 1254, 1260.) The concept is further circumscribed by the requirement that the assertion of personal jurisdiction must comport with fair play and substantial justice. (*Id*. at p. 1258.)

" '[O]nce it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with "fair play and substantial justice." ' [Citation.] Courts may evaluate the burden on the defendant of appearing in the forum, the forum state's interest in adjudicating the claim, the plaintiff's interest in convenient and effective relief within the forum, judicial economy, and 'the "shared interest of the several States in furthering fundamental substantive social policies." ' [Citation.]" (*Vons Companies*, *supra*, 14 Cal.4th at pp. 447-448.)

Vaile claims Porsboll voluntarily submitted to the state's jurisdiction because she (1) sought "services" from the California DCSS and "sought to register" the March 2008 Nevada order in California; (2) attempted to attach Vaile's salary in California; and (3) made a general appearance in California (even though denominated a "special appearance"). (See generally, *In re Vanessa Q.*, *supra*, 187 Cal.App.4th at p. 135 [general appearance or consent to jurisdiction cures defective service under Hague Service Convention].)

Vaile relies largely on *In re Marriage of Aron* (1990) 224 Cal.App.3d 1086 (*Aron*), decided by this division, which held that by registering a foreign support order in California and seeking a writ of execution, a nonresident wife subjected herself to personal jurisdiction in California. *Aron* involved a Texas resident who had obtained a divorce and child support order in Texas and later brought an action in a California court seeking to enforce the Texas order. Though she had no other California contacts, this division held she submitted to the jurisdiction of California by registering the Texas support order here and then by requesting and receiving a writ of execution. (*Id.* at pp. 1089, 1094-1096 ["By bringing the registration action in California, [wife] placed the

24

issue of enforcement of support before the court and personally submitted to its jurisdiction for that cause"].) *Aron* held the California court acquired jurisdiction not only to enforce the Texas order, but to modify it downward on the California husband's motion. (*Id.* at pp. 1091-1092.)

Firstly, we note that *Aron* was decided before UIFSA was in effect. In the ensuing years, state and federal lawmakers have redoubled their efforts to improve interstate collection of child support payments based on the overriding national need for such innovation. (Pub.L. 103-383 (Oct. 20, 1994) § 2, 108 Stat. 4063.) UIFSA's one-order system has completely replaced the preexisting uniform laws (see generally, 9 U. Laws Ann., Interstate Family Support Act (2001), Prefatory Note to Background Information, pp. 161-162; *In re Marriage of Gerkin* (2008) 161 Cal.App.4th 604, 611-612) and now works hand-in-hand with the federal Title IV-D program to make inter-jurisdictional collection of support payments more efficient. Had UIFSA been in effect when *Aron* was decided, the California court would not have had modification jurisdiction, although it could have enforced the Texas support order. (§§ 4952, 4960.) And while the panel that decided *Aron* thought it proper for California to exercise modification jurisdiction, doing so under the present regime would cast into disarray UIFSA's one-order system and the Title IV-D plan for nationwide enforceability.

In addition, we find *Aron* distinguishable factually from our case. To begin with, Porsboll's contacts with California appear to have been less substantial and more indirect than those of the Texas wife in *Aron*. In *Aron* the wife initiated legal action in the superior court in California, whereas Porsboll neither initiated any court action in California nor appeared in the actions initiated by Vaile. Porsboll never "registered" the Nevada orders in California. Rather, it was Vaile who registered the Nevada orders in superior court, simultaneously requesting their modification. (See §§ 4901, subds. (n), (p) [registration occurs when order is filed in superior court], 4902 [superior court is California's child support "tribunal"], 4952, subd. (a).)

Because he initiated the action in California, it was Vaile's burden to establish by a preponderance of the evidence the facts showing that Porsboll had sufficient contacts

25

with California to allow the Sonoma County court to exercise personal jurisdiction over her. (See *Shisler v. Sanfer Sports Cars, Inc.*, *supra*, 146 Cal.App.4th at p. 1259; *Dill v. Berquist Construction Co.*, *supra*, 24 Cal.App.4th at p. 1441.) If Vaile were to carry that burden, it would become Porsboll's burden to demonstrate that the exercise of jurisdiction would be unreasonable. (*Vons Companies*, *supra*, 14 Cal.4th at p. 449.) We conclude that Vaile failed to meet his burden of proof, and Porsboll, if she had a burden at all, satisfied it.

Documents in the record show that in late March 2008, one of Porsboll's attorneys filled out a UIFSA "registration statement" for a temporary Nevada child support order entered March 20, 2008. In filling out the form, Porsboll's attorney provided the addresses of the parties and their Social Security numbers to the child support enforcement authorities, as well as identifying information concerning the Nevada order to be enforced and the amount of monthly support and arrearage established by the order. The parties do not dispute that the registration statement ended up in the hands of the DCSS in Sonoma County, but they do dispute how it got there. Vaile suggests it was "submitted" by Porsboll's attorneys. Porsboll claims it was sent by the district attorney's office in Nevada in an administrative effort to enforce the Nevada order in California under Title IV-D.

While it can be inferred from the signing of the "registration statement" that one of Porsboll's attorneys may have known that the Nevada order was to be enforced in California, we find no evidence in the record that her attorneys transmitted the registration statement to California or directly contacted DCSS or the LCSA to have the order enforced. We also see nothing in the record to suggest that Porsboll sought any assistance in California beyond administrative efforts to collect the Nevada support obligation, thereby requesting only such assistance from California DCSS as federal law required of it. (42 U.S.C. §§ 651, 654A(4)(A)(i), (ii); see also, §§ 4921, 17500.)

On the other hand, the record shows collection efforts were actively pursued by Nevada authorities through a wage withholding notice. By early April 2008, they were communicating directly with Vaile's employer about wage withholding. (§ 4940.) By

26

statute, neither the Nevada authorities nor DCSS and its attorneys represented Porsboll in its collection efforts, or when it intervened in Vaile's action. Instead the Title IV-D agents operated in their respective states by representing the "public interest" of those states in the mutual enforcement of child support orders. (§ 17406, subd. (a); see also § 4921, subd. (c).)

Thus, we find no substantial evidence in the record to show that Porsboll or her attorneys purposefully availed themselves of any benefit in California. The actions by Porsboll's attorneys in March 2008 were as a matter of law insufficient to subject her to California's jurisdiction for purposes of Vaile's request for a controlling order determination in mid-2012.

But even if we were to consider Porsboll's contacts with California sufficient to exercise specific personal jurisdiction over her, we find countervailing considerations counseling against such action to overshadow the justifications for exercising jurisdiction. This factor—the interstate interest in child support collection—weighs heavily in our analysis that, even if Porsboll's actions were deemed sufficient to potentially warrant the exercise of specific jurisdiction over her, it would not comport with "fair play and substantial justice" to do so. (*Internat. Shoe*, *supra*, 326 U.S. at p. 316.) Examining the factors identified in *Vons Companies*, *supra*, we find the burden on Porsboll in appearing in California, the judicial economy achieved by allowing Nevada to continue to litigate this matter without California's interjection, and most importantly, " ' "the shared interest of the several States in furthering fundamental substantive social policies" ' " (*Vons Companies*, *supra*, 14 Cal.4th at p. 448) outweigh any interest that California may have had in the resolution of the dispute in the relatively short time when Vaile lived here, and those factors certainly outweigh California's interest now that none of the parties lives here.

Likewise, the convenience to Vaile in litigating the matter in California was of questionable weight when the decision was before the Sonoma County court in November 2012, and has completely dissipated now that he has moved to Kansas. Especially since Vaile sought his remedy in California after seeking the same remedy in

27

Nevada, and continued to encourage California to issue a conflicting order even after Nevada had resolved the issue, we place little or no weight on the convenience factor. Therefore, the balance of the factors identified in *Vons Companies*, *supra*, dictate beyond doubt that the Sonoma County court should not exercise personal jurisdiction over Porsboll upon remand.

The use of wage attachment and other non-judicial means of support collection across state boundaries benefits both individual obligees and the state and federal governments. The use of such interstate remedies must not be allowed to open up the matter of support for renewed litigation in every state where enforcement is sought. To hold as Vaile suggests would subject an individual obligee to personal jurisdiction in any state to which his or her ex-spouse happened to move, work, buy property, or open a bank account. Such a rule would work at cross-purposes to the integrated state and federal statutory scheme for expedited collection of child support under UIFSA, FFCCSOA and Title IV-D. We conclude that Porsboll did not submit to personal jurisdiction in California merely by seeking assistance from an administrative agency in Nevada to enforce a Nevada support order by nonjudicial means in California.

For the same reasons, to the extent that an effort was made to attach Vaile's salary in California through the administrative offices of Title IV-D agents, that action did not subject Porsboll to personal jurisdiction in California courts, because we conclude that by this contact Porsboll did not "purposefully avail" herself of the judicial processes of our state, but rather, at most, sought help through an interstate enforcement mechanism by contacting the Title IV-D agency in Nevada. (42 U.S.C. §§ 654, 666(a)(8)(A); 28 U.S.C. § 1738B.) Under the circumstances, the California superior court did not acquire personal jurisdiction over Porsboll.

### 3. *Porsboll did not make a general appearance in California.*

Porsboll has denominated her appeal a "special appearance," and she made a similar statement in her papers filed in the superior court. Vaile nevertheless contends Porsboll subjected herself to personal jurisdiction in California by making arguments on the merits in her briefs in addition to opposing personal jurisdiction. As Vaile argues, if a

28

party who disputes personal jurisdiction nevertheless appears in the action personally or through counsel in such a manner as to recognize the authority of the court to proceed, he or she may be deemed to have made a general appearance, thereby negating any deficiency in personal service. (*Dial 800 v. Fesbinder* (2004) 118 Cal.App.4th 32, 52-53.)

That is not what happened here. Porsboll took none of the actions recognized as a general appearance in Code of Civil Procedure section 1014 [a defendant makes a general appearance when he or she "answers, demurs, files a notice of motion to strike, files a notice of motion to transfer pursuant to Section 396b, moves for reclassification pursuant to Section 403.040, gives the plaintiff written notice of appearance, or when an attorney gives notice of appearance for the defendant"].

It is true that Porsboll's briefs contain argument related to the California court's lack of subject matter jurisdiction, as well as arguments about comity and abstention. But all of Porsboll's arguments were directed toward convincing the California court *not* to exercise jurisdiction over the matter. Porsboll did not voluntarily submit to the court's jurisdiction by making a general appearance.

Vaile cites *Wolfe v. City of Alexandria* (1990) 217 Cal.App.3d 541, 549 for the proposition that "a non-resident defendant who challenges the subject matter jurisdiction of the court makes a general appearance." The case actually held that the defendants did not make a general appearance and "the true issue was that of personal jurisdiction." (*Id.* at p. 550.) The same is true here.

In fact, Vaile's argument on this point was explicitly rejected by the California Supreme Court many years ago. *Goodwine v. Superior Court* (1965) 63 Cal.2d 481, 484 (*Goodwine*) held: "An answer, a demurrer, and a motion to strike constitute a general appearance (Code Civ. Proc., § 1014), since a court does not decide questions raised by such pleadings at the behest of persons over whom it has no jurisdiction. A court need not have jurisdiction over the person, however, to dismiss for lack of subject-matter jurisdiction. Indeed, the court must dismiss on that ground on its own motion. [Citations.] Thus, a challenge to the subject-matter jurisdiction of the court is not

29

inconsistent with a challenge to personal jurisdiction. Moreover, since the court must dismiss on its own motion, an appropriate challenge to subject-matter jurisdiction aids the court in performing its duty. The defendant should therefore be allowed to point out lack of subject-matter jurisdiction without making a general appearance."

Vaile further argues that Porsboll "requested relief that could only be granted if the Court had authority to proceed on the merits with personal jurisdiction of the parties." We disagree. The only affirmative relief Porsboll sought was to set aside the earlier order for lack of jurisdiction and a "clear order stating that this [c]ourt lacked jurisdiction both over the subject matter and the person of Cisilie Porsboll . . . to ensure that Mr. Vaile [cannot] further attempt to mis-use the *Order* in other jurisdictions." (Original italics.) A court may issue a statement that it has no jurisdiction without first having obtained jurisdiction. (*Goodwine*, *supra*, 63 Cal.2d at p. 484.) This is not the type of request for affirmative relief that would subject Porsboll to personal jurisdiction in California. (See *Renoir v. Redstar Corp.* (2004) 123 Cal.App.4th 1145, 1154.) Porsboll also requested attorney fees in connection with her motion for reconsideration, but making such a request does not amount to a general appearance. (*Shisler*, *supra*, 167 Cal.App.4th at p. 8.) And finally, Porsboll requested that Vaile be reported to the State Bar of California.[16] Again, such a request did not amount to a request for affirmative relief and did not transform Porsboll's special appearance into a general appearance.

Thus, we conclude not only that Porsboll was not properly served, but the jurisdictional problems run deeper. They require not just that the November 2012 order be set aside, but that the action be dismissed.

---

[16] During this protracted litigation, Vaile attended and graduated from law school and sat for and passed the California bar exam. He has not been admitted to the state bar on fitness grounds.

## IV.

## DISPOSITION

The Sonoma County Superior Court's order denying Porsboll's renewed motion to set aside the November 1, 2012 order is reversed.  The case is remanded to the superior court which, after setting aside the November 1, 2012 order, shall dismiss the action for lack of personal jurisdiction.  Porsboll is entitled to costs on appeal.

Vaile is ordered to file a copy of this opinion in the District Court for the Twenty-First Judicial District, Riley County, Kansas (docket no. 2012-DM-775).  Porsboll's attorneys are ordered to file a copy of this opinion in the Nevada family court and the Nevada Court of Appeals, and with the agencies in Norway that issued the child support orders there.


_____
RUVOLO, P. J.


We concur:


_____
REARDON, J.


_____
RIVERA, J.